TABAR, Appellant,

v.

CHARLIE'S TOWING SERVICE, INC.; Fabrizi Trucking
& Paving Company, Inc., Appellee.

[Cite as *Tabar v. Charlie's Towing Serv., Inc.* (1994), 97 Ohio App.3d 423.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64881.

Decided March 24, 1994.

424

*Ulmer & Berne* and *James A. DeRoche*, for appellant.

*Frederick D. Kanter*, for appellee.

KRUPANSKY, Judge.

Plaintiff-appellant Loretta M. Tabar timely appeals from a December 11, 1992 journal entry and opinion finding in favor of defendant-appellee Fabrizi Trucking and Paving Co., Inc ("Fabrizi, Inc.") with respect to Tabar's claims for conversion, breach of contract and negligence. Tabar originally brought the within action against only Emilio Fabrizi,[1] who is the major shareholder of Fabrizi, Inc., and against Charlie's Towing Service, Inc. Thereafter, Tabar voluntarily dismissed her complaint against Charlie's Towing Service, Inc. and the court granted Emilio Fabrizi's motion to join Fabrizi, Inc. as a codefendant. The trial court later dismissed Emilio Fabrizi from the *sub judice.* Thus, Tabar and Fabrizi, Inc. are the only parties to the within action.

Tabar is the owner of a 1979 GMC Royal Classic eighteen-wheel semi truck and one of the few women certified to drive such vehicles interstate. In January 1989, Tabar deposited her vehicle for regular maintenance with a company known as QIF, which was not a party to the case *sub judice.* At this time, QIF was the tenant of Fabrizi, Inc., from whom QIF leased its business premises, *i.e.,* QIF and Fabrizi, Inc. were not in business together but merely landlord and tenant.

Tabar routinely placed her vehicle with QIF for regular maintenance. However, she chose to place the vehicle for maintenance in January 1989 specifically because she sustained a back injury the previous month and was ordered by her physician not to drive. Tabar's injury subsequently prevented her from periodically inspecting her vehicle maintained in the custody of QIF.

In June 1989, however, Tabar was told by her physician she could return to work if she had special air bags installed in the vehicle. Thereafter, Tabar and QIF entered into an express agreement whereby QIF would make the necessary repairs on her vehicle, after which Tabar would tender payment to QIF.

In September 1989, Tabar returned to the QIF premises a second time, where she again entered into an oral agreement by which QIF would place her vehicle into indoor storage for the winter and make necessary repairs on the vehicle. Tabar was accompanied by Barb Margraff ("Margraff"), who assisted her in taking some personal items from the vehicle. At this time, Tabar and Margraff found the vehicle in the same good condition it was when Tabar originally brought the vehicle into QIF.

In October 1989, QIF breached its lease with Fabrizi, Inc. and absconded during the night, owing Fabrizi, Inc. thousands of dollars in rent. Thereafter,

---

1. We note the caption of the complaint designated defendant Fabrizi's first name as "Emilio," while the trial transcript spelled Fabrizi's first name "Emilia."

Charlie's Towing Service, Inc. took possession of the premises abandoned by QIF and became Fabrizi, Inc.'s tenant.

After QIF abandoned the property, Emilio Fabrizi, without Tabar's knowledge or consent, authorized Charlie's Towing Service to tow Tabar's vehicle to another lot owned by Fabrizi, Inc. Thereafter, Emilio Fabrizi never attempted to notify Tabar or anyone else that the vehicle had been moved, even though the truck was clearly marked with an identification number, the name "Central Transport," and the phrase "Lorrie Tabar, Bay Village, Ohio, owner-operator," and possessed two valid and "active" license plates. In addition, Emilio Fabrizi never notified police that he was in possession of the vehicle.

In April 1990, Tabar, who was still unaware her vehicle had been moved, entered into an agreement with Mark Kassloff ("Kassloff") for the sale of the vehicle. Kassloff offered to buy the vehicle for the sum of $19,800, and Tabar agreed to accept this amount for the sale of the vehicle. Kassloff thereafter went to inspect the vehicle, discovered it was missing and subsequently informed Tabar of this fact. Tabar then contacted the owner of Charlie's Towing Service, who told her someone had towed the vehicle from the lot, but he did not tell Tabar where the vehicle could be found.

Tabar subsequently reported her vehicle stolen to the Middleburg Heights Police Department. The police referred her to Fabrizi, Inc. Tabar then contacted Fabrizi, Inc. in May 1990 and was initially told by Emilio Fabrizi that he would not release the vehicle until Tabar paid the towing and storage charges due Fabrizi, Inc. Emilio Fabrizi did not immediately quote Tabar the amount due for towing and storage but, rather, told her to call him back in a week or ten days. Thereafter, Emilio Fabrizi continued to stall Tabar, who was unable to engage him in conversation for approximately six to eight weeks. During this time, Tabar was unable to secure a release of her vehicle, and it is still being held by Fabrizi, Inc. for towing and storage fees although Fabrizi, Inc. never presented Tabar with a bill.

On June 5, 1991, Tabar filed her complaint in common pleas court. Fabrizi, Inc. filed a counterclaim to recover the cost of towing and storage fees. The action was referred to arbitration and approximately one year later, on May 5, 1992, the arbitrators issued a report and award which found in favor of Tabar. Thereafter, Fabrizi, Inc. appealed the report of the arbitrators to the court of common pleas and requested a trial *de novo*.

In the interim, appellant inspected her vehicle accompanied by others who took photographs which were introduced into evidence at the arbitration hearing and at trial. Appellant noted serious damage to the vehicle, including, *inter alia*, a complete set of tires was missing from the vehicle, the driver's window was

knocked out, the grill was smashed and paint was chipped and faded. The truck was later appraised and found to have a value of only $1,500 due to the damage.

On September 22, 1992, a bench trial *de novo* was had in the common pleas court. The trial court issued separate findings of fact and conclusions of law. These are summarized as follows:

"1. Tabar failed to meet her burden of proof with respect to the claim of conversion;

"2. When Fabrizi, Inc. moved Tabar's vehicle an 'implied bailment contract' arose between the corporation and Tabar;

"3. Since a bailment contract existed, Fabrizi, Inc. was under a duty to use only reasonable, ordinary care with respect to the storage of Tabar's vehicle;

"4. Tabar provided no evidence Fabrizi, Inc. did not exercise ordinary, reasonable care in storing the vehicle;

"5. Tabar provided no evidence Fabrizi, Inc. breached its contract with Tabar; and

"6. Fabrizi, Inc. was under no duty to report the presence of an abandoned vehicle to police."

The instant timely appeal followed.

Appellant's assignments of error I and II shall be considered together and follow:

"I. The trial court erred as a matter of law in holding that defendant-appellee Fabrizi Trucking and Paving Company did not convert plaintiff-appellant Loretta Tabar's property.

"II. The trial court erred as a matter of law in holding that plaintiff-appellant Loretta Tabar owes defendant-appellee Fabrizi Trucking and Paving Company storage fees."

These assignments have merit.

In the case *sub judice*, appellant raises only questions of law with respect to the common pleas court's finding that Fabrizi, Inc. did not convert her vehicle but, instead, entered into an implied bailment agreement with Tabar.

Conversion is the wrongful control or exercise of dominion over property belonging to another inconsistent with or in denial of the rights of the owner. *Bench Billboard Co. v. Columbus* (1989), 63 Ohio App.3d 421, 579 N.E.2d 240; *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.* (1985), 24 Ohio App.3d 91, 24 OBR 160, 493 N.E.2d 289. In order to prove the conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property,

and (2) that the possessor refused to deliver the property to its rightful owner. *Id.* The measure of damages in a conversion action is the value of the converted property at the time it was converted. *Brumm v. McDonald & Co. Securities, Inc.* (1992), 78 Ohio App.3d 96, 603 N.E.2d 1141.

On appeal of the case *sub judice,* the parties do not dispute Fabrizi, Inc. exerted dominion and control over Tabar's vehicle or that Tabar demanded its return from Fabrizi, Inc. and Fabrizi, Inc. refused to deliver until appellant paid undetermined storage and towing fees. Tabar and Fabrizi, Inc., rather, dispute whether Fabrizi, Inc.'s acquisition of Tabar's vehicle was a *wrongful* or *unlawful* exercise of control over Tabar's vehicle. The common pleas court relied on *Kayanda v. Kamenir* (1984), 16 Ohio Misc.2d 1, 16 OBR 201, 475 N.E.2d 519, and concluded Fabrizi, Inc.'s actions resulted in an implied contract for bailment between Tabar and Fabrizi, Inc. and were, therefore, legal.

 A bailment requires (1) the delivery of property by one party to another for a particular purpose; (2) the bailment arises from an express or implied contract; and (3) the bailee's return of the bailed property, in the same condition as delivered, to the bailor once the purpose has been accomplished. *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826, 621 N.E.2d 1294; *Wolf v. Lakewood Hosp.* (1991), 73 Ohio App.3d 709, 598 N.E.2d 160; *W. Am. Ins. Co. v. Stith* (1990), 66 Ohio App.3d 605, 585 N.E.2d 903; *Kayanda, supra.* There must be an affirmative act of delivery by the bailor to the bailee. *Wolf, supra.*

 In the case *sub judice,* Tabar affirmatively delivered her vehicle to QIF for repairs pursuant to an express contract which called for appellant to pay for the repairs and take possession of her vehicle once repairs were completed. Hence, Tabar and QIF entered into a contract for bailment, which QIF breached. Thereafter, Fabrizi, Inc., which was not a party to the bailment agreement between Tabar and QIF but was merely QIF's landlord, took possession of Tabar's truck and moved it to another location without her knowledge or permission. Thus, Tabar neither affirmatively delivered her vehicle to Fabrizi, Inc. for bailment nor can it be said her bailment to QIF was the equivalent of a bailment to Fabrizi, Inc. since QIF was not the agent, employee or partner of Fabrizi, Inc. In the absence of an affirmative delivery by Tabar of her vehicle to Fabrizi, Inc., there was no bailment between the parties.

The common pleas court, relying upon *Kayanda, supra,* concluded Tabar and Fabrizi, Inc. entered into an *implied contract for bailment.* However, *Kayanda, supra,* is inapposite to the case *sub judice* since the two parties involved in *Kayanda* were already in privity by virtue of a rental contract, *i.e.,* the landlord took possession of property belonging to a tenant which the tenant left on the landlord's premises when the tenant abandoned those premises. By placing his

property upon the premises of the landlord, with whom he was contractually bound, the tenant made an affirmative delivery of the property. When the tenant abandoned his property, he entered into an *implied contract for bailment* with the landlord.

In the case *sub judice*, Tabar and Fabrizi, Inc. were not in privity with each other. Tabar was not the tenant of Fabrizi, Inc. but, rather, a customer of QIF, which was Fabrizi, Inc.'s tenant. We cannot say, therefore, that when Tabar delivered her vehicle to QIF she also affirmatively delivered it to Fabrizi, Inc. In addition, Tabar did not abandon her vehicle but, rather, employed QIF to make repairs to the vehicle. It was QIF who abandoned the premises and failed to notify Tabar. Therefore, there was no *implied contract for bailment* between Tabar and Fabrizi since there was no delivery by Tabar to Fabrizi and, hence, no bailment.

Assume, *arguendo*, an implied contract for bailment did arise pursuant to operation of law as found by the common pleas court. Fabrizi, Inc. breached the bailment agreement when it moved Tabar's vehicle, which was subsequently damaged. In *Stith, supra*, 66 Ohio App.3d at 608, 585 N.E.2d at 905, the court stated in relevant part as follows:

" ' "The weight of authority supports the rule that if the bail[ee], without authority, deviates from the contract as to the place of storage or keeping of the property, and a loss occurs which would not have occurred had the property been stored or kept in the place agreed upon, the bailee is liable, *even though he is not negligent.* * * * Where his contract is to keep the property in a particular place, the bailee's liability is the same notwithstanding he was compelled by force of circumstances to place it elsewhere and in so doing was not guilty of any negligence. In such a case it appears that *it is the bailee's duty to notify the bailor and to obtain his consent to the change if he is to avoid liability."* ' " (Emphasis added.)

██ In addition, since Fabrizi, Inc. is not in the business of storing vehicles, it did not acquire a lien for storage or towing services. In *Candler v. Ash* (1976), 53 Ohio App.2d 134, 7 O.O.3d 96, 372 N.E.2d 617, the court held that an operator of an automobile garage who is not engaged in the business of storing automobiles for compensation does not possess a warehouseman's or bailee's lien for towing and storing a vehicle. Moreover, where the operator of a storage lot seeks payment for towing and storage fees pursuant to the doctrine of implied contract or *quantum meruit*, no storage charges may be imposed until after the lot operator has informed the vehicle's owner of the operator's possession of the vehicle and the charges its continued storage will generate. *Doughman v. Long* (1987), 42 Ohio App.3d 17, 536 N.E.2d 394. Fabrizi, Inc. did not deny it neither sought to identify the owner of the vehicle nor sought to inform anyone that the

vehicle had been moved to another location. Fabrizi, Inc., thus, breached the bailment agreement when it moved the truck without Tabar's knowledge or consent and when it refused to deliver the vehicle to Tabar unless she paid storage and towing fees.

■ Thus, it is clear no bailment agreement existed or arose between Fabrizi, Inc. and Tabar. However, if one did exist, it was breached by Fabrizi, Inc. when the corporation (1) failed to notify Tabar that Fabrizi, Inc. was in possession of her vehicle; (2) failed to notify Tabar of the charges continued storage of her vehicle would generate; (3) failed to notify Tabar that her vehicle had been moved; (4) failed to obtain her consent for the move; and (5) unlawfully refused to deliver the vehicle to Tabar upon her demand. *Doughman, Candler,* and *Stith, supra.* Thus, even if an implied contract for bailment existed in the case *sub judice,* the trial judge nevertheless reached an incorrect conclusion with respect to the rights of the bailee.

■ Based upon the foregoing analyses, it is evident Fabrizi, Inc. converted Tabar's vehicle when Fabrizi, Inc. wrongfully and unlawfully exercised control and dominion over Tabar's vehicle in violation of her rights of ownership and refused to deliver the vehicle to Tabar upon her demand. *Bench Billboard, supra; Hadler Realty, supra.* Therefore, the opinion and order of the common pleas court is reversed.

As noted in *Brumm, supra,* Tabar was entitled to damages equivalent to the reasonable market value of the vehicle converted by Fabrizi, Inc. At trial, Tabar demonstrated Kassloff offered to buy the vehicle for $19,800 and that she accepted his offer. Tabar, thus, presented evidence her vehicle had a fair market value of $19,800. Appellant's assignments of error are, therefore, sustained.

Final judgment is entered for appellant in the amount of $19,800 plus costs of this action.

*Judgment reversed.*

HARPER, P.J., and JOHN V. CORRIGAN, J., concur.

JOHN V. CORRIGAN, J., retired, of the Eighth Appellate District, sitting by assignment.