OPINION
Plaintiff-appellee Team Fleet Financing Corp. is a company formed for the purpose of holding title to vehicles available for rental by Budget Rent-a-Car Systems, Inc. In June 1996, Budget rented a car owned by Team Fleet to Jonathan Newell, who failed to return the car and was later convicted of theft. Meanwhile, Team Fleet hired an investigative firm to locate the car, but the firm was unable to do so.
Later, Team Fleet learned that Newell had abandoned the car, which was wrecked. In June 1996 — the same month as the original rental — the police found it and ordered it towed by defendant-appellant Mike Kaeser Auto Body Sales, Inc. Neither the police nor Kaeser notified Team Fleet that Kaeser had possession of the car. In fact, Team Fleet did not learn that Kaeser had the car until July 1997 — thirteen months later — when Kaeser sent Team Fleet a certified letter that stated that Team Fleet would forfeit ownership of the car if the car was not claimed.
After Team Fleet received the letter, one of its representatives claimed ownership. Kaeser responded that it would cost over $3,300 to reclaim the car, due to the towing and storage fees since June 1996, when Kaeser had originally towed the car. Team Fleet refused to pay that amount, but later offered to pay $854, which represented the towing and storage fees since July 1997, when Kaeser had first notified Team Fleet that Kaeser had possession of the car. But, unknown to Team Fleet, Kaeser had already applied for and obtained title to the car before Team Fleet made the $854 offer. Michael Kaeser, the owner of the business, later repaired the car and sold it to his cousin.
Team Fleet sued Kaeser for conversion. After a bench trial, the court held in favor of Team Fleet and awarded damages of $6,005.57, plus costs. To arrive at the damage amount, the court found that the car had a purchase price of $13,498. The court also found that repairs of $6,878 were necessary to restore the car to its prior condition. Subtracting the $6,878 from $13,498 — plus subtractions for depreciation and costs for towing and storage — the court arrived at the $6,005.57 figure.
Kaeser now appeals, asserting three assignments of error. We reject all three, as we believe that the trial court did an excellent job of resolving this case.
In the first assignment, Kaeser asserts that the court erred in its judgment of conversion. Kaeser argues that it lawfully gained title to the car under R.C. 4505.101, which provides, "The owner of any repair garage or place of storage in which a motor vehicle with a value of less than two thousand five hundred dollars has been left unclaimed for fifteen days or more following completion of the requested repair or agreed term of storage may send by certified mail, return receipt requested to the last known address of the owner a notice to remove the motor vehicle. If the motor vehicle remains unclaimed by the owner for fifteen days after the mailing of the notice, and the person on whose property the vehicle has been abandoned has received the signed receipt from the certified mail or has been notified that delivery was not possible, the person shall obtain a certificate of title to the motor vehicle in the person's name in the manner provided in this section." Kaeser claims that it complied with R.C. 4505.101's requirements and properly gained title to the car after Team Fleet failed to reclaim the car.
The problem with Kaeser's argument is that the situation here is far removed from the ambit of the statute it seeks to have us apply. The trial court held — and we agree — that R.C. 4505.101 is inapplicable.
First, the court found that the car was worth more than $2,500. At trial, Mr. Kaeser claimed that the car had suffered such extensive damage that it was worthless. But, in light of the fact that Mr. Kaeser had repaired the car and had sold it to his cousin, the court rejected Mr. Kaeser's claim and concluded, based on testimony by Team Fleet's representatives, that the car was worth more than $2,500. Essentially, the court's judgment involved determinations of the credibility of the witnesses giving their estimates of the car's value, and we find no error in the court's decision to resolve issues of credibility in favor of Team Fleet.
Also, the court properly found that there was never a "requested repair or agreed term of storage." Team Fleet never requested repairs or agreed for Kaeser to store the car. The only reason the car was with Kaeser was because the car was stolen by Newell and later towed by Kaeser. Team Fleet, which the trial court found had conducted a reasonable investigation to locate the car, did not even know that Kaeser had the car until July 1997. The record reflects that, when Kaeser informed Team Fleet that it had the car, Team Fleet tried to reclaim it. Just because Team Fleet would not agree to the $3,300 amount demanded by Kaeser did not mean that Team Fleet had relinquished its claim to the car and had given Kaeser a right to apply for title. In short, R.C. 4505.101
was not intended to apply to situations such as the one here.
We conclude that the $3,300 demanded by Kaeser was an unreasonable amount. It was not reasonable for Kaeser to expect Team Fleet to pay for storage costs that had accumulated before July 1997, when Team Fleet first learned that Kaeser had possession of the car. And, after Team Fleet attempted to reclaim the car, Kaeser should not have applied for title, because Kaeser knew that Team Fleet was attempting to reclaim it. Under these circumstances, we hold that Kaeser wrongfully exercised dominion over the car. The court properly concluded that conversion was established. We overrule Kaeser's first assignment.[1]
In Kaeser's second and third assignments, it challenges the amount of damages awarded to Team Fleet. The measure of damages in a conversion action is the value of the converted property at the time it was converted.[2] Here, we conclude that the court properly determined the value of the car by subtracting the repair costs of $6,878 (plus the depreciation amount and the amount owed for towing and storage) from the car's purchase price of $13,498. The amounts were supported by competent and credible evidence. The $13,498 figure was given, without objection, by a general manager for Budget Rent-a-Car, who was familiar with the books and records of Team Fleet. On direct examination by Team Fleet, the general manager, using values established by the National Automobile Dealers' Association, testified that the retail value of the car was $13,700. On cross-examination, the general manager stated that Team Fleet had only paid $13,498 for it. We conclude that the court did not err by using $13,498 for the value of the car.
As for the $6,878, this amount was given by Team Fleet's maintenance manager. The manager stated that Team Fleet, because of the high number of its vehicles that needed repairs, received substantial discounts from mechanics for parts and service. The manager then explained that he had looked at the estimated cost of repairs as computed by Mr. Kaeser. Taking into account the discounts that Team Fleet would have received, the manager testified, without objection, that the amount of repairs for Team Fleet would have totaled $6,878. Kaeser points out that the manager never actually saw the car when he made his calculations. Certainly seeing the car would have made the manager's testimony stronger. But we still conclude that there was enough of a basis for the manager's opinion as to the repair costs that the court did not err by using the $6,878 amount in the computation of damages.
Finally, Kaeser points out that Newell was ordered to pay restitution for his theft of the car. In light of Newell's restitution order, Kaeser argues that it should not also have to pay damages to Team Fleet. But there is no evidence that Newell has ever paid any of the restitution ordered by the court, and we cannot find any rule of law that would preclude Team Fleet from recovering a damage judgment from Kaeser. We overrule the second and third assignments.
Therefore, the judgment of the trial court is affirmed.
Judgment affirmed.
 Hildebrandt, P.J., and Shannon, J., concur.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
Please Note:
The court has recorded its own entry on the date of the release of this Opinion.
[1] See Tabar v. Charlie's Towing Service, Inc. (1994),97 Ohio App.3d 423, 427, 646 N.E.2d 1132, 1136 ("Conversion is the wrongful control or exercise of dominion over property belonging to another inconsistent with or in denial of the rights of the owner."); see, generally, Doughman v. Long (1987), 42 Ohio App.3d 17,536 N.E.2d 394.
[2] Tabar at 428, 646 N.E.2d at 1136.