JOURNAL ENTRY and OPINION
Defendant-appellant Renee Van Cauwenberghe appeals from the jury verdict in favor of plaintiff-appellee Roseline Intrater and the trial court's award of prejudgment interest. Roseline Intrater cross appeals and argues the trial court erred by ordering a remittitur for the punitive damages awarded by the jury. We find no merit to the appeal or cross appeal and affirm.
Intrater filed suit against Van Cauwenberghe on March 5, 1999, claiming Van Cauwenberghe deceptively induced her to give Van Cauwenberghe $41,000, which she then converted to her own use.
Van Cauwenberghe filed a motion for summary judgment, arguing the statute of limitations had run on Intrater's claims. The trial court denied the motion, finding that issues of fact regarding the statute of limitations still remained. The matter proceeded to a jury trial.
The evidence at trial revealed that Intrater had a close friendship with Van Cauwenberghe, which started in 1982 when she met Van Cauwenberghe at a club at which Van Cauwenberghe was a singer. Intrater explained that she was at a vulnerable point in her life because her husband had just passed away and Van Cauwenberghe was very maternal towards her. Through the years, Intrater and her son spent many holidays with Van Cauwenberghe.
Intrater stated that in 1986 Van Cauwenberghe began discussing investments with her. She told Intrater that her then fiance, Sam Weiss, a probate attorney, was a genius in the stock market. She suggested that since they both were widows, they should invest some money to secure their futures.
Van Cauwenberghe explained to Intrater that Weiss was very secretive and would not invest an outsider's money. Therefore, she proposed that she would tell Weiss the money was hers. Intrater admitted that she thought this was strange, but had come to trust her. The women decided to buy a block of $100,000 worth of stock.
On November 6, 1986, Intrater wrote her first check for $10,000. She made it to the order of Notre Maison, the name of the bed and breakfast operated by Van Cauwenberghe, in order to keep her investment anonymous. The check was immediately cashed. Shortly thereafter, Intrater told Van Cauwenberghe she did not mind investing with Van Cauwenberghe because she trusted her, but that she was uncomfortable about not having a receipt or any paper documenting the investment. In response, Van Cauwenberghe gave her a check for $10,000 as a guarantee on the investment.
In May 1987, Intrater wrote another check for $10,000 made payable to Notre Maison, as another installment towards the $100,000 investment. At this time Van Cauwenberghe wrote her another guarantee check, this time in the amount of $20,000.
Intrater testified that she wrote a third check for the amount of $10,000 towards the investment, and in September 1987, gave Van Cauwenberghe her last payment of $11,000 in cash. In exchange for the cash, Van Cauwenberghe again wrote Intrater a guarantee check.
Intrater testified that she later tried to cash the $11,000 check because she needed to pay some bills. However, the check was returned for insufficient funds. She called Van Cauwenberghe and told her about the bounced check. Van Cauwenberghe became very upset and told Intrater that she should have told her before she tried to cash the check. Van Cauwenberghe explained to her that there was no money in the account because it was all invested with Weiss. She then told Intrater that the next time she wanted to cash a check, she should tell her so that she could make sure enough money was in the account. Intrater never again attempted to cash any of the guarantee checks.
Periodically, Intrater would ask Van Cauwenberghe regarding the status of her investment and Van Cauwenberghe would tell her it was doing very well. According to Intrater, at one point, Van Cauwenberghe had told her that her investment had grown to over $300,000.
Beginning in 1995, Van Cauwenberghe became distant with Intrater. Based on her accountant's advice in 1995, Intrater requested an accounting of her investment. Because Van Cauwenberghe failed to give her an accounting despite repeated requests, Intrater wrote a series of five letters between September 1995 and August 1997 requesting that Van Cauwenberghe give her an accounting and also expressing her concerns.
Sometime in 1996, Intrater discovered that Sam Weiss had died. Intrater confronted Van Cauwenberghe and demanded an accounting because there was no longer a need to keep the investment a secret. However, Van Cauwenberghe told her it would take time until Weiss' estate was settled.
Ira Greenberg testified that he was Intrater's accountant. While discussing estate planning issues with Intrater, she told him about the investment and that she had no documentation. Greenberg told her she should get documentation or talk to an attorney.
Intrater's son Neal testified to the close friendship between his mother and Van Cauwenberghe. His mother told him of her plan to give money to Van Cauwenberghe so that they could invest through Weiss. He was not concerned that the investment was not placed in writing because the friendship between the two women was strong at the time. He was present during one meeting where his mother sought documentation as to how the stock was doing. At this meeting, Van Cauwenberghe assured his mother the investment was doing well in excess of $300,000 and that she should rest easy.
Van Cauwenberghe testified that Intrater never gave her money for Weiss to invest. According to Van Cauwenberghe, Intrater wrote her check for $10,000 in November 1986 and another $10,000 in May 1987 in an attempt to become business partners with her in operating her bed and breakfast. Both checks were made out to Notre Maison, the name of the bed and breakfast. Van Cauwenberghe stated that she returned the money because she decided she did not want to be business partners with Intrater. She initially wrote Intrater a check for $10,000 for the first check, which had no date on it, which she claims that Intrater never cashed. She then wrote another check for $20,000 on May 10, 1987, the same date as the second check from Intrater. The amount represented the total given to her from Intrater, because Van Cauwenberghe thought the first check had become stale.
Van Cauwenberghe claims the third check she wrote to Intrater was a loan to Intrater for $11,000 due to Intrater's tax problems. She told Intrater not to cash it until Van Cauwenberghe's mother's estate money was wired from France. According to Van Cauwenberghe, Intrater attempted to cash the check which was returned for insufficient funds. Intrater was furious and demanded cash.
Van Cauwenberghe admitted that on the day she was notified that her motion for summary judgment was denied, she found a purported receipt from Intrater to Sam Weiss for $20,000. An expert testified at trial that he evaluated the signatures of both Weiss and Intrater on the receipt and found them to be forgeries.
Based upon the above evidence, the jury found the statute of limitations on Intrater's fraud claim began to run on January 1, 1996, the date Intrater wrote a letter to Van Cauwenberghe informing her that both her attorney and accountant recommended that she obtain documentation of the investment.
The jury also found in favor of Intrater on her fraud and conversion claims and awarded her $41,000 in compensatory damages and $250,000 in punitive damages and also found attorney fees were appropriate. The trial court awarded Intrater $86,322 for attorney fees.
Pursuant to Intrater's motion, the trial court awarded Intrater $52,401.43 in prejudgment interest. Based upon Van Cauwenberghe's motion for remittitur, the trial court reduced the punitive damages award to $125,000.
Van Cauwenberghe appeals and assigns four assignments of error.
 I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN HER FAVOR ON THE GROUND THAT PLAINTIFF'S CLAIM WAS BARRED BY THE STATUTE OF LIMITATIONS.
Van Cauwenberghe argues that the trial court erred in denying her motion for summary judgment because the statute of limitations on Intrater's fraud and conversion claims had expired.
The Ohio Supreme Court in Continental Ins. Co. v. Whittington (1994),71 Ohio St.3d 150, held:
 Any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made.
Only when the denial of a summary judgment motion is predicated on a pure issue of law will the decision not be considered harmless and be reviewed by an appellate court. Ahern v. Ameritech Corp. (2000),137 Ohio App.3d 734, 769. Generally, the determination of when a plaintiff reasonably should have discovered the perpetration of a fraud necessarily involves questions of fact that would preclude resolution of the matter by summary judgment. Hamilton v. Ohio Savings Bank (1994),70 Ohio St.3d 137, 140; Investors REIT, One v. Jacobs (1989),46 Ohio St.3d 176, 182.
In the present case, the evidence presented at trial indicated that there were material issues of fact in support of Intrater's contention that the statute of limitations on her claims had not expired. Therefore, any error by the trial court in denying Van Cauwenberghe's motion for summary judgment is moot. See, Continental Ins. v. Whittington, supra.
Fraud is explicitly enumerated in the statute as a cause of action subject to the discovery rule. Helman v. EPL Prolong, Inc. (2000),139 Ohio App.3d 231, 249. The discovery rule generally provides that a cause of action accrues for purposes of the governing statute of limitations at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury. Id. at 249.
In the present case, although it is true that one of the checks Van Cauwenberghe gave Intrater bounced in 1987, when Intrater questioned her about it, Van Cauwenberghe explained to her the funds were not in the account because they were given to Weiss to invest. Whether this was a plausible explanation was a question for the jury.
Likewise, whether it was reasonable for Intrater to believe Van Cauwenberghe's assurances that the investment was doing well and whether it was reasonable to believe her excuses for not giving Intrater an accounting were issues for the jury to resolve.
Accordingly, Van Cauwenberghe's first assignment of error is overruled.
 II. THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A VERDICT IN PLAINTIFF'S FAVOR AS A MATTER OF LAW, AND THEREFORE, A FORTIORI, THE JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE TRIAL COURT PLAINLY ERRED WHEN IT FAILED TO DIRECT A VERDICT IN DEFENDANT'S FAVOR BASED ON THE INSUFFICIENCY OF THE EVIDENCE.
Van Cauwenberghe alleges that her attorney committed plain error in failing to move for a directed verdict in her favor because the evidence indicated that a reasonable person would have discovered the fraud and conversion earlier than 1995. She also argues that the evidence was insufficient to support the verdict because Intrater failed to show conversion. She maintains that there was no evidence presented that she never gave the money to Weiss for investing nor was there any evidence that she used the money for her own use.
Because Van Cauwenberghe's counsel failed to move for a directed verdict, any error based on insufficiency of the evidence is waived. See Chemical Bank of New York v. Newman (1990), 52 Ohio St.3d 204, 206
(failure to move for directed verdict at the close of all evidence waives that issue for purposes of appellate review.)
Van Cauwenberghe relies on the plain error doctrine to excuse counsel's failure to move for a directed verdict. However, [i]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, at syllabus.
Here, we do not find the circumstances in this case to be exceptional to warrant the application of the plain error doctrine. There was sufficient evidence presented at trial, as we discussed in the first assignment of error, to permit reasonable minds to conclude that the statute of limitations did not expire.
In order to prove conversion, the owner of the property must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion and control over the property, and (2) that the possessor refused to deliver the property to its rightful owner. Tabar v. Charlie's Towing Serv., Inc. (1994),97 Ohio App.3d 423, 427-428. In the present case, Intrater presented evidence that she gave funds to Van Cauwenberghe and that when she requested the funds to be returned with any interest accumulated, Van Cauwenberghe refused.
Therefore, there was sufficient evidence presented in support of the jury's verdict and no plain error occurred.
Van Cauwenberghe's second and third assignment of errors are overruled.
 IV. THE TRIAL COURT ERRED IN AWARDING PREJUDGMENT INTEREST UNDER SECTION 1343.03(A), OHIO REV. CODE.
Van Cauwenberghe argues that because Intrater moved for prejudgment interest pursuant to R.C. 1343.03(A), which governs statutory interest for breach of contract, that the trial court erred in awarding prejudgment interest.
Although we agree with Van Cauwenberghe that R.C. 1343.03(A) does not provide a basis for the award of compensatory interest, we find that the trial court nonetheless had the authority to award the interest because it was awarded as part of Intrater's compensatory award and not as a statutory penalty. Phoenix Phase I Associates v. Ginsberg, Guren 
Merritt (1985), 23 Ohio App.3d 1, 4. As this court in Persky, Shapiro, Salim, Esper, Arnoff Nolfi Co., L.P.A. v. Guyuron, M.D. (Dec. 14, 2000), Cuyahoga App. No. 77249, unreported, held, [T]he common law principle of prejudgment interest survives the enactment of R.C. 1343.03. * * * An award of interest on a conversion claim is within the trial court's discretion as part of the compensatory award. See, also Desantis v. Smedley (1986), 34 Ohio App.3d 218; Lyle v. Durham (1984),16 Ohio App.3d 1.
Based on the record before us, we have no basis for determining the prejudgment interest awarded by the trial court for compensatory damages was in error. The trial transcript indicates that both parties' attorneys engaged in a discussion with the trial court regarding the calculation of interest in the form of compensatory damages. The trial court did not permit Intrater to produce an expert on damages because the interest the investment would have earned was too speculative. The trial court decided it would calculate the interest at the end of the trial and Van Cauwenberghe's attorney seemed to agree with this. (TR. at 110).
Based on the authorities cited above, we find no abuse of discretion by the trial court in awarding the prejudgment interest as part of the compensatory damages.
Van Cauwenberghe's fourth assignment or error is overruled.
 CROSS APPEAL I. THE TRIAL COURT ERRED TO THE PREJUDICE OF CROSS-APPELLANT BY REDUCING THE JURY'S PUNITIVE DAMAGE AWARD FROM $250,000 TO $125,000.
Intrater assigns one error on cross appeal arguing that the trial court erred in reducing the punitive damages by half.
The Ohio Supreme Court in Digital Analog Design Corp. v. North Supply Co. (1989), 44 Ohio St.3d 36, syllabus held:
 When a course of events is governed by a single animus, even though a defendant may be liable to compensate plaintiff for the damages occasioned by a number of torts committed in such course of events, a defendant may only be punished once by a single award of punitive damages. Recoveries for multiple claims for punitive damages, contained within separately pleaded tort theories, may not be combined, or stacked, when such multiple tort claims arise from the same animus.
The trial court in the present case reduced the jury award after deciding that Intrater's claims for fraud and conversion arose from one animus. This was proper because the fraud and conversion clearly arose from one animus in this case.
Intrater argues that the jury awarded the $250,000 as representative of one animus. However, the interrogatory forms clearly indicate that the jury awarded $125,000 in punitive damages for each claim for a grand total of $250,000. We find no inconsistency between the general verdict and interrogatories.
Intrater's cross appeal is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, A.J., CONCURS; TERRENCE O'DONNELL, J., DISSENTS WITH SEPARATE DISSENTING OPINION.