OPINION
{¶ 1} Defendant Gregory Scott Haselberger appeals a judgment of the Court of Common Pleas of Ashland County, Ohio, entered in favor of plaintiffs Holly Jo Haselberger Petefish and Jacquelyn Marie Harvison, co-trustees of the Francis Emil Haselberger, Jr. and Mary S. Haselberger living trust. Appellant assigns seven errors to the trial court:
 {¶ 2} "I. THE TRIAL COURT ERRED IN ORDERING THE RETURN OF THE CIVIL WAR MEMORABILIA.
 {¶ 3} "II. THE AWARD OF COMPENSATORY DAMAGES WAS ERROR.
 {¶ 4} "III. THE AMOUNT OF THE COMPENSATORY DAMAGES AWARD WAS EXCESSIVE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 5} "IV. THE TRIAL COURT ERRED IN AWARDING PUNITIVE DAMAGES.
 {¶ 6} "V. THE AMOUNT OF PUNITIVE DAMAGES AWARDED WAS EXCESSIVE.
 {¶ 7} "VI. THE TRIAL COURT'S AWARD ATTORNEY FEES AND COSTS WAS ERROR.
 {¶ 8} "VII. THE TRIAL COURT ERRED IN OVERRULING THE MOTION FOR NEW TRIAL."
 {¶ 9} The trial court made extensive findings of fact and conclusions of law. Francis Emil Haselberger, Jr. and Mary S. Haselberger formed a trust which upon their deaths controlled the disposition of their estates' assets. Mary had five living children from a previous marriage, four of whom are beneficiaries of the trust. Appellee Harvison is one of those children. The trial court referred to these persons collectively as the Sullivans.
 {¶ 10} Francis Emil had three children from a previous marriage, all of whom are beneficiaries of the trust. Appellee Holly Jo is one of the beneficiaries, as is appellant Gregory Scott. The trial court referred to these individuals collectively as the Haselbergers
 {¶ 11} Mary predeceased her husband, and on his death, the trust provided all the property should be divided in half. One-half would go to Francis Emil's three children, the Hasselberger group, and the other half would go to Mary Helen's four children, the Sullivan group. Each half share was then to be divided equally amongst the members of the respective groups.
 {¶ 12} After Francis Emil's death, appellant and his wife, appellees, and various other beneficiaries traveled to Las Cruces, New Mexico where Francis Emil had lived. Their purpose in going to Las Cruces included, among other things, collecting and liquidating the trust assets and dividing the assets between the Haselberger beneficiaries and the Sullivan beneficiaries.
 {¶ 13} The trustees allowed the individual beneficiaries to take certain items of trust property if the property did not possess unique value and if there were no objections from the other beneficiaries. The Las Cruces home contained a particular room referred to as the "war room". The war room contained various unique and valuable items including a collection of civil war memorabilia, various cut and uncut gemstones, a turquoise necklace, and 3 three-carat diamonds. The civil war memorabilia had significant sentimental value.
 {¶ 14} The court did not set a value on the civil war memorabilia. The other contents of the war room had an estimated value of $24,000. Francis Emil also had 44 one-ounce gold coins which were divided between the two sets of beneficiaries. The Haselbergers received 25 of the gold coins, each valued at $416, for an aggregate value $10,400. The contents of the war room were not divided amongst any of the beneficiaries, but were claimed by appellant.
 {¶ 15} The beneficiaries rented two trucks, one to take the Sullivan property to the Texas home of appellee co-trustee Harvison for distribution. The Sullivan property is not part of this dispute.
 {¶ 16} The trial court found the other rental truck was intended to transport the Haselberger property to appellee co-trustee Holly's home in Virginia. The trial court found this truck contained the 25 gold coins and the war room contents. The trial court found appellant's belligerent exercise of dominion and control over the war room had prevented the trustees or any other beneficiaries from inspecting or inventorying the war room artifacts.
 {¶ 17} The truck containing the Haselberger property did not arrive in Virginia, but ended up instead at appellant's home in Ohio. The trial court found appellant took the truck with the intention of converting the entire Haselberger property for his own. The trial court found the value of the trust property in this truck was at least $34,400 excluding the civil war memorabilia.
 {¶ 18} The trial court found appellant had given some of the ordinary household goods and furnishings to appellees, but would not relinquish the civil war memorabilia and other property. Appellant testified he did not have the gold coins, the gemstones, and the jewelry, but the trial court found the items were either in his possession or he had destroyed or disposed of them. The court found appellant's intent was to damage appellees' case against him and to frustrate their attempts to recover the trusts' assets.
 {¶ 19} The trial court ordered appellant to turn over to appellee Holly Jo all of the trust property in his possession. The court found this included but was not limited to the civil war memorabilia, the gold coins, the gemstones, the jewelry, a computer, furniture, and other items. The trial court also awarded appellees compensatory damages in the amount of $34,400, which represents the estimated value of the property in the war room, for which appellant could not account. The court also awarded punitive damages in the amount of $100,000, and authorized appellees to set off the damages from appellant's share of the trust.
 I {¶ 20} In his first assignment of error, appellant argues the trial court erred in ordering him to return the civil war memorabilia. Appellant challenges the court's finding he had converted this property. Appellant argues in two parts: first, appellees did not establish a necessary element of conversion, namely, a demand for the property's return; and secondly, appellant is the rightful owner of the civil war memorabilia and did not convert it. Appellant cites us to Tabar v.Charlie's Towing Service, Inc. (1994), 97 Ohio App. 3d 423 as authority for the proposition to establish conversion a plaintiff must prove a demand and refusal.
 {¶ 21} Appellees reply Ohio recognizes two distinct types of conversion. The type of conversion to which appellant refers occurs when a person properly acquires a temporary interest in an item, but refuses to return it when the owner demands it back. The other type of conversion occurs when a person unlawfully or improperly acquires an item. This cause of action does not require a demand for the return of the property.
 {¶ 22} Appellant and his wife testified he was the proper owner of the civil war memorabilia. Appellees presented testimony no one gave appellant the property, but rather, appellant diverted the truck containing this property to his own home. The trial court believed appellees' evidence and found appellant's not credible.
 {¶ 23} Judgments which are supported by competent and credible evidence going to all the material elements of the case must not be disturbed as being against the manifest weight of the evidence, C.E.Morris Company v. Foley Construction Company (1978), 54 Ohio St. 2d 279. In reviewing the judgment, all reasonable presumptions must be made in favor of the findings of fact, Seasons Coal v. Cleveland (1984),10 Ohio St. 3d 77. We find the record contains sufficient competent and credible evidence going to each element of conversion. Accordingly, the trial court properly ordered appellant to return the civil war memorabilia to the appellees-trustees.
 {¶ 24} The first assignment of error is overruled.
 II {¶ 25} In his second assignment of error, appellant argues the trial court improperly computed compensatory damages. Appellant urges the relief should be either return of the items, or payment for them, but not both.
 {¶ 26} Appellant testified he never had the missing property although he did have other things. The trial court believed appellant had all the property, and ordered him to return the property in his possession, and because he could not return it all, to reimburse the estate for the unaccounted items valued at $34,400.
 {¶ 27} Appellant challenges the trial court's finding the missing property was in the war room and ended up in the truck appellant took to his home. Appellant also urges there was no competent proof of value.
 {¶ 28} Again, the trial court was trier of fact, and there is competent and credible evidence in the record to support its findings. We do agree with appellant he should return the property or pay for it, not both, and if some of the lost property resurfaces, then it should be returned in lieu of payment. Conversely, if appellant fails to produce an item, he should reimburse the estate instead. The court should not close the case until a final accounting is done.
 {¶ 29} The second assignment of error is overruled.
 III {¶ 30} In his third assignment of error, appellant urges the court erred in computing compensatory damages, because appellant is a beneficiary of the trust, entitled to one-third of the Haselberger share.
 {¶ 31} The trial court did not order appellant to relinquish all claims to his share of the estate, but rather, ordered the return of the property to the trustees for valuation and division. The trial court ordered the appellees to set off the compensatory and punitive damages from appellant's share of the trust property.
 {¶ 32} The third assignment of error is overruled.
 IV {¶ 33} In his fourth assignment of error, appellant urges the trial court erred in awarding punitive damages. Appellant urges he removed the property either with the permission of the trustees, or in the honest belief he had the permission of the trustees.
 {¶ 34} The trial court found appellant acted willfully and intentionally for the purpose of preventing the lawful and proper administration of the trust, and for the purpose of depriving the other Haselberger beneficiaries of their share of the trust property. The trial court further found appellant willfully and intentionally disposed of or destroyed the $34,400 worth of property so appellees could not prove the value of the missing property. The trial court found appellant's behavior was meant as retaliation for perceived inequities in the distribution of his mother's estate.
 {¶ 35} There is sufficient competent and credible evidence to support the trial court's findings. Thus, we find the trial court properly found punitive damages were available.
 {¶ 36} The fourth assignment of error is overruled.
 V {¶ 37} In Villella v. Waikem Motors, Inc. (1989), 45 Ohio St. 3d 36,543 N.E. 2d 464, the Ohio Supreme Court held punitive damages which are not the result of passion and prejudice may not be reduced on appeal. A large disparity between compensatory damages and punitive damages, standing alone, is insufficient to justify interfering with the province of the trier of fact. Id. at 40. There is no rigid mathematical standard to determine proportionality, but if awards of punitive damages are so disproportionate to the actual damages, this may indicate they are the result of passion and prejudice, Gray v. Allison Division, General MotorsCorporation (1977), 52 Ohio App. 2d, 348. The purpose of punitive damages is to punish and deter, but not to vanquish or annihilate the defendant, see Villella at 43, Brown, concurring.
 {¶ 38} The Court of Appeals for Union County was confronted with a large punitive damage award in the case of Gollihue v. Consolidated RailCorporation (1997), 120 Ohio App. 3d 378, 697 N.E. 2d 1109. In this case, one person was injured and another killed in a collision with a train. The jury awarded 6 million dollars in punitive damages to the estate of the deceased. The court of appeals looked to the actual and potential harm likely to be caused by Conrail's tortious conduct, and noted the award of punitive damages represented approximately one week's net profit for the company. The court of appeals affirmed the award of punitive damages.
 {¶ 39} We find the punitive damages assessed in this action were excessive. The court was able to value the missing property, and the civil war memorabilia with its unique value to the trust will be returned. Although appellant improperly retained the property for some time, the real basis for the award of punitive damages is appellant's disruptive and very upsetting behavior over the course of a few days in New Mexico and Arkansas. In assessing any punitive damages, the trial court should consider these factors, as well as the appellant's financial circumstances.
 {¶ 40} The fifth assignment of error is sustained.
 VI {¶ 41} In his sixth assignment of error, appellant argues the court erred in awarding attorney fees and costs. Appellant concedes attorney fees may be awarded in an action where punitive damages have been awarded, and because we find in IV, supra, punitive damages may be appropriate, it follows the trial court did not err in assessing attorney fees and costs.
 {¶ 42} The sixth assignment of error is overruled.
 VII {¶ 43} In his seventh assignment of error, appellant argues the trial court gave an inadequate ground for denying a new trial. Civ. R. 59 (A) only requires a court to state the grounds if it grants a new trial. Further, if the verdict is supported by competent and credible evidence, a new trial should not be granted, see Verbon v. Pennese (1982),7 Ohio App. 3d 182.
 {¶ 44} The seventh assignment of error is overruled.
 {¶ 45} For the foregoing reasons, the judgment of the Court of Common Pleas of Ashland County, Ohio, is affirmed in part and reversed in part, and the award of punitive damages is vacated. The cause is remanded to the court for further consideration of punitive damages.
Gwin, J., and Boggins, P.J., and Wise, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Ashland County, Ohio, is affirmed in part and reversed in part, and the cause is remanded to the court for further proceedings in accord with law and consistent with this opinion. Costs to be split between appellant and appellee.