[Cite as *VanBuskirk v. Gibson*, 2019-Ohio-3353.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| RICK VANBUSKIRK, et al. | JUDGES:<br>Hon. W. Scott Gwin, P. J.<br>Hon. John W. Wise, J. |
| Plaintiffs-Appellants/Cross-Appellees | Hon. Earle E. Wise, Jr., J. |
| -vs- | Case No. 2018 CA 0133 |
| VICKI E. GIBSON | |
| Defendant-Appellee/Cross-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
                             Pleas, Case No.  2016 CV 1138


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      August 21, 2019


APPEARANCES:

For Plaintiffs-Appellants/Cross-Appellees     For Defendant-Appellee/Cross-Appellant

NICHOLAS D. ATTERHOLT                CHARLES T. ROBINSON
WELDON, HUSTON & KEYSER LLP          3 North Main Street
76 North Mulberry Street             Suite 400
Mansfield, Ohio  44902               Mansfield, Ohio  44902

*Wise, John, J.*

{¶1} Appellants/Cross-Appellees Rick VanBuskirk and Street Cars Unlimited, LLC, appeal the decision of the Court of Common Pleas, Richland County, which granted a judgment for monetary damages against Appellee/Cross Appellant Vicki E. Gibson. The relevant facts leading to this appeal are as follows.

{¶2} Appellant VanBuskirk (hereinafter "appellant") and Appellee Gibson first met in February 2015. A couple of months later, appellant moved in with appellee at her home in Shelby, Ohio. Appellant was married at the time, but his divorce was finalized in March 2016. Appellant continued to live with appellee until August 2016. He did not pay her rent during their time together.

{¶3} Appellant had been working for a municipal water department, but he left that job at the end of 2015 to focus on his automobile sales business known as "Street Cars Unlimited, LLC." Appellant had formed this business as an Ohio limited liability company in January 2003. However, appellant had been operating it as a side business while he worked full-time, first at a factory and then with the water department. Tr. at 76.

{¶4} Three business properties played roles in the parties' relationship. First, appellant owned a garage and lot on Sandusky Street in Chatfield, Ohio, which he utilized as the registered address of Street Cars Unlimited, LLC. Appellant kept this property as part of the award in his 2016 divorce. Secondly, appellee purchased a garage and property at 49 Carleton Avenue in Shelby, close to her house, for use as a car sales lot. Finally, appellee owned a lot located on North Gamble Street in Shelby, where a number of the automobiles in the LLC's inventory were kept.

**{¶5}**   In May 2016, appellant opened a business checking account at Civista Bank for Street Cars Unlimited, largely funding it with approximately $76,000.00 he had obtained by cashing out the Ohio Public Employees Retirement System ("PERS") account connected with his water department job. Appellee was put on the Civista account as a "signer." Tr. at 298. She was thus able to make deposits and withdrawals from the account. However, appellant remained the sole owner and statutory agent for the LLC. There were never any documents signed to make appellee a part owner or statutory agent of the business.

**{¶6}**   As part of appellant's divorce, the domestic relations court ordered appellant to pay his former wife the sum of $15,800.00, plus $3,000.00 for her attorney fees. It is undisputed that appellee loaned appellant $18,800.00 to help him comply with the aforesaid court order. However, appellee later withdrew that amount from the Civista Bank business account.

**{¶7}**   The parties' relationship began to deteriorate in August 2016. Appellant became concerned about the status of funds in the Civista account, and he moved out of appellee's house. On August 18, 2016, appellee reported to the Shelby Police Department that on the evening of August 16, 2016, several vehicles of Street Cars Unlimited kept on the lot appellee owned on North Gamble Street had been damaged. Tr. at 248. Officer C.W. Baker went to that location and observed damage to a Lincoln, a Dodge Ram, a red Ford Mustang, and a GMC Yukon.

**{¶8}**   On August 22, 2016, appellant and his brother went to appellee's house. Appellee and her son were supposed to meet them but did not appear. With police present, appellant broke a window and got in the garage at nearby 49 Carleton Avenue.

He went inside and took his small hand tools, fishing equipment, speakers, model cars, his motorcycle and his Jeep.

{¶9} By August 23, 2016, the Civista Bank account had been depleted to just $406.00. Tr. at 94. About $50,000.00 had been used for purchasing used cars at auto auctions. Appellant thereafter claimed that $25,518.67 was "unaccounted for." Tr. at 101.

{¶10} On November 18, 2016, Appellants Rick VanBuskirk and Street Cars Unlimited, LLC filed a complaint for replevin, injunctive relief, and money damages against appellant in the Richland County Common Pleas Court ("trial court").

{¶11} A hearing on replevin was conducted on March 20, 2017. As a result, an agreement was reached for appellee to return several of the vehicles in question, and to retain several vehicles.

{¶12} The remaining issues, particularly the determination of monetary damages, were heard via a bench trial before a magistrate on October 20, 2017 and November 22, 2017.

{¶13} On July 2, 2018, the magistrate issued a nine-page decision finding that appellant was entitled to damages of $9,106.00. The magistrate further found that appellant "did not prove by a preponderance of the evidence the remainder of his lengthy list of personal property he claims was not returned to him." Magistrate's Decision at 8.

{¶14} Both appellee and appellant thereafter filed objections to the magistrate's decision, which the trial court accepted as timely. Among other things, appellant claimed that the magistrate had failed to address a conversion claim related to funds in the Civista Bank account, and that he failed to award conversion damages for personal property that had allegedly not been returned.

{¶15} On November 27, 2018, the trial court issued an eleven-page judgment entry overruling all of the objections, but setting forth additional analysis concerning the denial of appellant's claim for conversion regarding the Civista Bank account funds.

{¶16} On December 27, 2018, Appellants VanBuskirk and Street Cars Unlimited, LLC filed a notice of appeal. They herein raise the following two Assignments of Error:

{¶17} "I.  THE TRIAL COURT ERRED IN DETERMINING THAT PLAINTIFF-APPELLANT DID NOT PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT DEFENDANT-APPELLEE CONVERTED PLAINTIFF-APPELLANT'S EXTENSIVE LIST OF PERSONAL PROPERTY.

{¶18} "II. THE TRIAL COURT ERRED BY FAILING TO RULE ON PLAINTIFF-APPELLANT'S CLAIM THAT NEARLY $26,000.00 WORTH OF PLAINTIFF-APPELLANT'S BANK ACCOUNT FUNDS HAD BEEN CONVERTED BY DEFENDANT-APPELLEE."

{¶19} On January 2, 2019, Appellee Gibson filed a notice of cross-appeal. She herein raises the following two Assignments of Error:

{¶20} "I.  THE COURT ERRORED [SIC] IN GRANTING JUDGMENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶21} "II.  THE COURT ERRORED [SIC] IN GRANTING JUDGMENT WITHOUT EVIDENCE TO ESTABLISH DAMAGES IN THIS CASE."

*VanBuskirk's Appeal*

I.

**{¶22}** In their First Assignment of Error, appellants argue the trial court erred in determining that they had not proved appellee converted VanBuskirk's items of personal property. We disagree.

**{¶23}** As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA–5758, 1982 WL 2911. Generally, a civil judgment which is supported by competent and credible evidence may not be reversed as being against the manifest weight of the evidence. *See State v. McGill,* 5th Dist. Fairfield No.2004–CA–72, 2005–Ohio–2278, 2005 WL 1092394, ¶ 18. A reviewing court must determine whether the finder of fact, in resolving conflicts in the evidence, clearly lost his or her way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *See Hunter v. Green,* 5th Dist. Coshocton No. 12–CA–2, 2012–Ohio–5801, 2012 WL 6094172, ¶ 25, citing *Eastley v. Volkman,* 132 Ohio St.3d 328, 972 N.E.2d 517, 2012–Ohio–2179.

**{¶24}** The tort of conversion is defined as "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Heflin v. Ossman,* 5th Dist. Fairfield No. 05CA17, 2005–Ohio–6876, ¶ 20, quoting *Joyce v. General Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172. Thus, the elements required for conversion are: (1) a defendant's exercise of dominion or control; (2) over a plaintiff's property; and (3) in a

manner inconsistent with the plaintiff's rights of ownership. *Id.,* citing *Cozmyk Ent., Inc. v. Hoy* (June 30, 1997), Franklin App. No. 96APE10–1380, 1997 WL 358816.

**{¶25}** Appellants in the case *sub judice* present what is essentially a claim of internal inconsistencies in the trial court's rulings on the conversion of property issue. In other words, appellants point out the magistrate determined that Appellant VanBuskirk had left personal items such as his birth certificate, social security card, State of Ohio water and boiler licenses, and divorce decree at appellee's Carleton Avenue residence. *See* Magistrate's Decision at 7. Appellants then note that the magistrate nonetheless accepted appellee's testimony denying that she still had any of appellant's personal property at her house, while still finding her responsible for a missing Jeep light bar and a motorcycle ignition switch, as well as lost titles to a 1958 Ford truck and a 1972 Ford truck (without which the vehicles have only scrap value), but little else. *Id.*

**{¶26}** It is well-established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown,* 9th Dist. Summit No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass* (1967), 10 Ohio St .2d 230, 227 N.E.2d 212. Furthermore, a jury or fact-finder can reject certain aspects of a witness's testimony; thus, "credibility is not an 'all or nothing' proposition." *State v. Cola*, 77 Ohio App.3d 448, 452, 602 N.E.2d 730, 733 (11th Dist.1991), citing *State v. Sallee*, 11th Dist. Ashtabula No. 90-A-1512, 1991 WL 132186.

**{¶27}** Upon review, we do not find the trial court, in ruling on the objections to the magistrate's decision, clearly lost its way and created a manifest miscarriage of justice warranting reversal on the issue of appellant's personal items.

**{¶28}** Appellants' First Assignment of Error is therefore overruled.

II.

{¶29} In their Second Assignment of Error, appellants contend the trial court erred in declining to find appellee had converted approximately $26,000.00 in bank funds. We disagree.

{¶30} Generally, "[i]n order to prove the conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner. The measure of damages in a conversion action is the value of the converted property at the time it was converted." *Congress Lake Club v. Witte,* 5th Dist. Stark No. 2007CA00191, 2008–Ohio–6799, ¶ 66, quoting *Tabar v. Charlie's Towing Serv., Inc.* (1994), 97 Ohio App.3d 423, 427–428, 646 N.E.2d 1132 (additional citations omitted). However, "Ohio law recognizes two types of conversion. The first type is where the wrongful possessor properly acquires the property but then refuses to return it upon demand and the second is where the wrongful possessor simply unlawfully acquires the property." *In re Panel Town of Dayton, Inc.* (S.D.Ohio 2006), 338 B.R. 764, 774, citing *Petefish v. Haselberger,* 5th Dist. Ashland No. 2005–COA–012, 2005–Ohio–5638. Thus, the aforesaid demand and refusal elements are conditional, and are necessary "if the original taking was rightful and no act of dominion or control inconsistent with the [owner's] ownership had taken place." *See Ohio Telephone Equipment & Sales, Inc. v. Hadler Realty Co.* (1985), 24 Ohio App.3d 91, 94. *See, also, Bush v. Signals Power & Grounding Specialists, Inc.*, 5th Dist. Richland No. 08 CA 88, 2009-Ohio-5095, ¶ 27.

**{¶31}** In the case *sub judice*, it presently appears undisputed that on May 27, 2016, appellant executed a limited liability company authorization resolution which authorized both appellant and appellee to: 1) open any deposit or share account of the LLC; 2) endorse checks and orders for the payment of money, withdraw or transfer funds, or deposit money with Civista Bank; and 3) make any application for the issuance of a business Visa card. *See* Magistrate's Decision at 2.

**{¶32}** Appellants contend that appellee's access to the LLC's bank account did not give her "carte blanche" regarding the funds. Appellant's Brief at 19. However, appellee testified before the magistrate that any funds withdrawn were given to appellant. *See* Tr. at 302-303. As noted previously, appellee at one point had loaned $18,800.00 to appellant to meet his divorce obligations. The magistrate found that appellee's withdrawal of that amount from the Civista bank account "was to reimburse herself for the $15,800.00 divorce settlement and $3,000.00 attorney fees ***." Decision at 3. *See, also*, Tr. at 304. However, on re-direct, appellee testified that she never got the $18,800.00. *See* Tr. at 360. But the trial court ultimately determined that the conversion claim failed because 1) the bank account was set up to allow appellee to engage in regular transactions and 2) the demand and refusal elements of *Bush*, *supra*, were not met by appellants. *See* Judgment Entry at 7-8. In particular, the court determined that because appellant had allowed appellee to act as a signer of the bank account, her "original taking of the money in the account was not against the will of the owner of the property ***." *Id.* at 7.

**{¶33}** We emphasize that this was a complicated situation in which appellant and appellee were involved in both a romantic and business/financial relationship during the

time frame in question, until both of those relationships quickly went downhill in August 2016. Appellant paid no rent for living at the Carleton Avenue address and utilizing the business properties on Carleton and on North Gamble. *See* Tr. at 52, 229. As appellee reiterated on cross-examination, in explaining why she did not have a better recollection of where the money went: "I didn't operate the business. I have a job. I have to support the family." Tr. at 304. Upon review of the record, we find the court's aforesaid reasoning is supported by competent and credible evidence, and further, the trial court's credibility determinations do not warrant reversal.

{¶34} Appellants' Second Assignment of Error is therefore overruled.

### *Gibson's Cross-Appeal*

#### I., II.

{¶35} In her First and Second Assignments of Error on cross-appeal, which she argues together, appellee contends the trial court's judgment against her for $9,106.00 was against the manifest weight of the evidence. We disagree.

{¶36} The basis for the $9,106.00 judgment in favor of appellant is summarized as follows:

{¶37} The court awarded appellant a total of $5,750.00 for the physical damage to the 2000 Ford Mustang, the 2011 Ford Mustang, the 2003 Dodge Ram pickup, and the 2007 Pontiac G-6. The court also awarded the sum of $2,500 each for the missing titles to the 1958 Ford truck and the 1972 Ford truck. The court also awarded damages totaling $600.00 for the missing Jeep light bar and motorcycle ignition switch. The court then subtracted $2,244.00, representing an "offset to [appellee] for $5,810.00 and $5,329.00 bank deposits made by [appellee] less $8,895.00 for the cars she received

[the 2004 Mitsubishi Spyder, 2005 Chevrolet Equinox, and the 2007 Lincoln]." Magistrate's Decision at 7.

**{¶38}** The magistrate's conclusion that appellee was responsible for damages to the cars was explained as follows: "The first reason is timing - it occurred after Mr. VanBuskirk moved out of [Appellee Gibson's] home but before he tried to recover his property. The second is her access -- the damages were done while the cars were on Ms. Gibson's lot, and only the cars he wanted were damaged. The third and most telling reason is Ms. Gibson's bitter anger and hatred which motivated such actions." Decision at 6.

**{¶39}** Appellee urges that at the time of the damages being reported to the police, it was still unclear as to who would get which vehicles, and that it is unreasonable to find that she would have damaged "her own cars" and then contacted law enforcement to report such activity on her part. She concedes that she was unhappy with appellant, but she maintains that the magistrate effectively found the existence of potentially criminal activity on her part without an evidentiary basis.

**{¶40}** However, upon review, we do not find the magistrate and trial court clearly lost their way and created a manifest miscarriage of justice warranting reversal on the assessment of monetary damages against appellee.

**{¶41}** Appellee's First and Second Assignments of Error on cross-appeal are overruled.

**{¶42}** For the foregoing reasons, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.

By: Wise, John, J.

Gwin, P. J., and

Wise, Earle, J., concur.

JWW/d 0731

.