**STEADMAN et al., Appellees,**

v.

**NELSON; Dalton, Appellant.**

[Cite as *Steadman v. Nelson,* 155 Ohio App.3d 282, 2003-Ohio-6057.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030321.

Decided Nov. 14, 2003.

Edward O. Keller, for appellees.

Michael Dalton, pro se.

Per Curiam.

{¶ 1} The defendant-appellant, Michael E. Dalton, appeals from the writ of restitution issued by the trial court in a forcible-entry-and-detainer action brought by plaintiffs-appellees Ronald R. and Barbara L. Steadman, his landlords. In his four assignments of error, he contends that (1) it was constitutional error for the clerk's office to provide his landlords with certain forms and checklists pertaining to their action for forcible entry and detainer without providing a similar service to aid in his defense against such an action; (2) the trial court erred by granting the writ notwithstanding his claim that he was under no obligation to pay rent because of the Steadmans' failure to make "federal lead-based paint disclosures"; (3) the trial court erred by setting a continuance bond; and (4) the court's issuance of the writ violated his rights to due process, equal protection, and freedom from unconstitutional seizure. For the following reasons, we affirm.

{¶ 2} The premises in question, a house located at 1951 Windmill Way, was originally leased to a person Dalton described in oral argument as his "mate," Wilma L. Nelson. Nelson had rented from the Steadmans for several years, originally under a written lease agreement dated June 1, 1998, and was considered by them to be a "good tenant." Dalton lived with Nelson and, according to

Barbara Steadman, "locked her out of the house" following an altercation that occurred in July 2002. Barbara Steadman testified that Nelson "could not get back in" and that this stalemate between Nelson and Dalton continued through August and then September, at which point Steadman talked to Dalton, who professed a desire to stay in the house and even expressed some hope that Nelson might return. Dalton and the Steadmans therefore reached an oral agreement whereby Dalton was required to pay rent of $150 per week to remain in the house. According to Barbara Steadman, Dalton paid the rent for October and November but did not pay any rent thereafter. On January 20, 2003, the Steadmans served a notice of eviction on Dalton. On February 2, 2003, the Steadmans filed their action for forcible entry and detainer in the Hamilton County Municipal Court.

{¶ 3} Dalton, acting pro se, responded by filing a demand for a jury trial. A hearing before a magistrate was conducted on February 21, 2003, at which time Dalton's request for a jury trial was granted and a continuance bond was set at $2,400 (calculated by multiplying the monthly rent by the estimated months to trial). Dalton was given 30 days to post the cash bond.

{¶ 4} On March 4, 2003, Dalton filed his answer. In his answer, Dalton averred that the Steadmans' failure to inform him of any lead-based paints on the premises was a violation of the Residential Lead–Based Hazard Reduction Act of 1992, Section 4852(d), Title 42, U.S.Code. In Dalton's view, the Steadmans' alleged failure both nullified his obligation to pay rent and afforded him a right to remain on the premises rent-free. Indeed, he claimed a "possessory lien" on the property of $32,400 based upon the rent that he and Nelson (who had been previously dismissed from the case) had previously paid the Steadmans.

{¶ 5} Dalton next filed a counterclaim on March 5, 2003. Count I of the counterclaim prayed for damages of $32,400 based on the Steadmans' alleged violation of the Residential Lead–Based Hazard Reduction Act. Although not setting forth any facts to suggest that he had any knowledge that the premises contained any lead-based paints, Dalton claimed that the "potential hazards" caused him "mental anguish" and that he had suffered "neurological disorders," apparently as a result of lead-based paints that he simply presumed were on the premises. To ensure adequate compensation, he requested triple damages and $10,000 in "civil sanctions" for what he alleged were four separate violations of the Act. Additionally, Dalton asserted a claim that the Steadmans had breached a "forbearance arrangement" he had made with them; that the Steadmans had violated the "Fair Debt and collections act" [sic] by using profane words and actions to suggest to him that he should leave their house, given the fact that he was no longer intending to pay rent; that the Steadmans had inflicted damage to his "creditworthiness"; that the Steadmans had posted "maliciously, libelous,

documentation" [sic] causing him irreparable damage; that the Steadmans (rather than he, who had been staying on the premises rent-free) had been unjustly enriched; and that the Steadmans had damaged his relationship with Nelson (whom, it must be remembered, he had locked out of the house) and were the reason why the relationship had "deteriorated to one of adversary," causing him "mental anguish and damage to creditworthiness."

{¶ 6} The Steadmans replied to the counterclaims on March 13, 2003. On that same date, they moved for a writ of restitution on the basis that Dalton had failed to post the required bond. Dalton then filed several motions for the magistrate to set aside the bond, which were denied sub silentio. On April 9, 2003, the court issued the writ. On April 23, 2003, Dalton filed an appeal from the order granting the writ. Finally, on April 28, 2003, the municipal court transferred Dalton's counterclaims to the court of common pleas, since they involved damages exceeding the court's jurisdiction.

{¶ 7} In his first assignment of error, Dalton now alleges that, because of certain forms and checklists provided by the clerk's office to aid landlords in forcible-entry-and-detainer actions, the trial court acted as an "advisor in fact" for the Steadmans, thus violating his constitutional rights to equal protection and redress in the courts. Obviously, on this record, there is simply no basis to validate such a claim. We also note that Dalton appears not to have been deterred at all from presenting any claim that he wished.

{¶ 8} In his second assignment of error, Dalton alleges that the writ of restitution was improperly issued, given his claim that he was not obligated to pay any rent. As Dalton reads the federal regulations regarding disclosures for lead-based paint, the Steadmans' failure to advise him of the presence of any lead-based paints nullified any rent obligation he may have had, entitled him to any back rent he (or his ex-girlfriend) may have paid, granted him a "possessory lien" on the property, and afforded him a right to stay on the property in perpetuity despite his concerns that it was ruining his health.

{¶ 9} Unfortunately, Dalton has not read the Act well enough. The Act applies only to "target housing," or housing that is "covered by an application for mortgage insurance or housing assistance payments under a program administered by the Secretary or otherwise receives more than $5,000 in project-based assistance under a Federal housing program." Section 4822(a)(1), Title 42, U.S.Code. This means, in short, public housing. Furthermore, the disclosure obligations are owed only to prospective purchasers of target housing constructed between certain dates when lead-based paints have been discovered and may be waived if a risk-assessment performed by a certified contractor determines that no lead-based paints are present. Section 4822(a)(3)(B), Title 42, U.S.Code.

Nothing in the record suggests that the premises on Windmill Way were the type of "target housing" or public housing covered by the Act (other than the fact that Dalton has now been living there for close to a year rent-free). Furthermore, even if the Act were to apply, Dalton did not provide any factual basis for his claim that the premises contained lead-based paint. Finally, we note that the Act has been interpreted as not giving rise to a private right of action, if it were even the slightest bit applicable, which it is not. See *Santiago by Muniz v. Hernandez* (E.D.N.Y.1999), 53 F.Supp.2d 264.

{¶ 10} In sum, the trial court was absolutely correct when it ruled that Dalton's arguments based on the Act were not even remotely relevant to the issue of his obligation to pay rent.

{¶ 11} In his third assignment of error, Dalton argues that it was error for the court to set a continuance bond following his request for a jury trial, because the statutes providing for such a bond somehow denied him equal protection, due process, and freedom from unconstitutional seizure. It should be pointed out that Dalton has made no claim of indigency, nor did he provide the court below with any reason why he should not be made to pay rent to the court pending resolution of this landlord-tenant dispute. It is apparently Dalton's heartfelt belief that the Constitution requires a legal system that allows him to remain in someone else's house while not paying rent, either to the court or to the landlord, as long as he can manufacture legal claims against the landlord. This is not the law or the mandate of the Constitution. Although Ohio law provides that the nonpayment of rent may be excused under certain circumstances when the landlord fails to comply with the duties mandated by R.C. 5321.04, the remedies established by the legislature are contained in R.C. 5321.07 and require the tenant to pay the disputed rent into a court-administered escrow account.

{¶ 12} Finally, in his fourth assignment of error, Dalton argues that the writ should not have been issued based upon constitutional arguments similar to those we have already discussed and rejected. Moreover, Dalton argues that the magistrate's decision setting the bond was never signed and therefore never adopted by the trial court. We agree with him that the magistrate's decision lacks the trial court's signature. But in *Miele v. Ribovich* (2000), 90 Ohio St.3d 439, 739 N.E.2d 333, the Ohio Supreme Court held that the time-consuming requirements of Civ.R. 53 are only applicable to the extent that they do not interfere with the summary nature of forcible-entry-and-detainer actions. As noted by the court, such actions are "intended to serve as an expedited mechanism by which an aggrieved landlord may recover possession of real property." Id. at 441, 739 N.E.2d 333. Noting that Civ.R. 53(E), as amended, no longer requires the trial court in the absence of objections to make an independent analysis before adopting the magistrate's decision, the court observed that the

amendment was particularly pertinent to forcible-entry-and-detainer actions because "the nature of interests involved * * * merit special consideration." Id. at 444, 739 N.E.2d 333. Here, although there is no signature on the magistrate's decision setting the bond, the trial court later signed the entry issuing the writ, and we hold that such signature was sufficient to constitute an adoption of the magistrate's decision on the bond given its interlocutory nature and the summary nature of the forcible-entry-and-detainer proceeding.

{¶ 13} For these reasons, we hold this appeal to be frivolous, and the judgment of the trial court is, accordingly, affirmed.

Judgment affirmed.

Doan, P.J., Gorman and Painter, JJ., concur.