LEE, Appellant,

v.

WALLACE et al., Appellees.

[Cite as *Lee v. Wallace,* 186 Ohio App.3d 18, 2010-Ohio-250.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 92850.

Decided Jan. 28, 2010.

Thomas I. Perotti, for appellant.

Rawlin, Gravens Co., L.P.A., and Ronald V. Rawlin, for appellees John F. Wallace et al.

Ulmer & Berne, L.L.P., and Gary S. Greenlee, for appellee State Farm Fire & Casualty Company.

Mark D. Amaddio; and Koeth, Rice & Leo Co., L.P.A., Robert J. Koeth, and Ann E. Leo, for appellee Nancy Wallace.

Forrest A. Norman, for appellee Sally Wallace.

MARY J. BOYLE, Judge.

{¶ 1} Plaintiff-appellant, Michelle Lee, appeals from a judgment granting the motions for summary judgment of defendants-appellees, the estate of John

Wallace, Sally Wallace, Robert Burke, and Nancy Wallace, arguing that the trial court incorrectly concluded that she was not entitled to the protections of R.C.1923.01 et seq., the forcible-entry-and-detainer statute. The resolution of this case hinges on whether Lee acquired a tenancy in John Wallace's home during her employment as a home-healthcare aide. Based on the facts of this case, we find that no tenancy was created and therefore affirm.

## Procedural History and Facts

{¶ 2} Lee, who had worked for approximately six weeks as a live-in caregiver for John Wallace (now deceased), commenced the underlying action following the termination of her employment and removal from John's home. The facts preceding the lawsuit are as follows:

{¶ 3} In early 2007, John faced a series of physical ailments that eventually took away most of his ability to care for himself. To accommodate his desire to remain in his home of 50 years, he, with the assistance of his daughters, Sally and Nancy, made arrangements for home healthcare and hired two part-time home-healthcare assistants. In August 2007, the family advertised for additional full-time help for a "live-in caregiver."

{¶ 4} Lee responded to the advertisement and was hired. In exchange for her services, Lee was paid $625 a week. Her responsibilities included administering John's medication, running errands, keeping the house orderly, and assisting John as needed, which sometimes involved nighttime hours. As part of her employment, Lee was provided with a private room in John's house.

{¶ 5} Lee was not required to pay rent for staying at John's house but was restricted from having her own guests over.

{¶ 6} A week prior to the termination of her employment, Lee learned that John's daughter, Sally, who was John's attorney-in-fact and who had the authority to terminate Lee's employment, was coming to town and intended to fire Lee. Lee contacted an attorney and the Shaker Heights Municipal Court regarding her purported rights, including her right to remain in the house.

{¶ 7} On October 5, 2007—six weeks after Lee was hired—Sally, along with her husband, Robert Burke, and sister, Nancy, arrived at John's house and asked Lee to leave and allow the family to communicate in private. When Lee returned, the locks had been changed and Lee was asked to retrieve her belongings and leave. Lee resisted at first and claimed that she was entitled to at least three days' notice. The Shaker Heights police were ultimately called to the home.

{¶ 8} After it was discovered that Lee could not drive her own vehicle because she had a suspended license, Nancy and Robert accompanied her to her storage unit and helped unload her belongings.

{¶ 9} Lee was also paid an additional week's wages in exchange for her promise to leave John alone and to stay away from the premises.

{¶ 10} Lee subsequently filed suit against the Wallaces and Robert Burke, asserting the following ten counts in her amended complaint: (1) intentional/reckless infliction of emotional distress, (2) trespass, (3) conversion, (4) invasion of privacy, (5) and (6) violations of the Ohio Landlord Tenant Act under R.C. 5321.04(A)(8) (landlord obligated to provide tenant with reasonable notice prior to entering premises) and R.C. 5321.15(15) (proscription against "self-help" evictions between a landlord and a tenant), (7) wrongful eviction, (8) punitive damages, (9) breach of contract, and (10) unjust enrichment.

{¶ 11} All four defendants moved for summary judgment. In support of their motion, the defendants attached Lee's deposition testimony, which revealed the following significant facts: (1) Lee did not pay rent or execute a rental agreement with any of the defendants, (2) Lee was maintaining a room elsewhere while she was working for John, (3) none of Lee's accounts (nor her driver's license) identified John's residence as her home address, (4) Lee was not permitted to have guests in John's home, and (5) Lee acknowledged that she would have had no right to remain in the Wallace home if she had quit her job.

{¶ 12} The trial court granted the defendants' motions for summary judgment, which Lee appeals, raising a single assignment of error: "The trial court erred, as a matter of law, when it granted defendants' motion for summary judgment." Lee, however, raises arguments challenging the trial court's grant of summary judgment as it relates only to her claim for wrongful eviction. Accordingly, we limit our review to this claim. See App.R. 12(A)(2).

## Forcible Entry and Detainer Statute

{¶ 13} Lee's entire argument on appeal is that the trial court erroneously concluded that she was not subject to the protections of the forcible-entry-and-detainer statute, R.C.1923.01 et seq., and that the defendants' failure to provide her with a three-day notice amounted to a wrongful eviction. In support of her claim, Lee relies on R.C.1923.02(A)(1) and (5), which provide the following:

{¶ 14} "(A) Proceedings under this chapter may be had as follows:

{¶ 15} "(1) Against tenants or manufactured home park residents holding over their terms;

{¶ 16} " * * *

{¶ 17} "(5) When the defendant is an occupier of lands or tenements, without color of title, and the complainant has the right of possession to them * * *."

{¶ 18} Lee argues that (1) it is not necessary for this court to find that she had a tenancy in the Wallace home to determine whether R.C. Chapter 1923 applies to her and (2) the trial court erred in relying on the definition of a tenant as contained in Ohio's Landlord Tenant Act, R.C. Chapter 5321. She urges this court to apply the statutory definition contained in R.C. 1923.02(A)(5). Relying on this statutory provision, she claims that her position as a "live-in caregiver" satisfies the definition of an "occupier of land" and, therefore, she is entitled to the protections of R.C. Chapter 1923. We find Lee's argument flawed.

{¶ 19} Lee misconstrues the statutory scheme giving rise to a forcible-entry-and-detainer action, i.e., R.C. Chapter 1923. Generally, a forcible-entry-and-detainer action is intended to serve as an expedited mechanism by which an aggrieved landlord may recover possession of real property. *Steadman v. Nelson,* 155 Ohio App.3d 282, 2003-Ohio-6057, 800 N.E.2d 775, appeal not allowed, 102 Ohio St.3d 1409, 2004-Ohio-1763, 806 N.E.2d 562. To the extent that a property owner or landlord has an obligation to comply with R.C. Chapter 1923, that obligation arises only under Ohio's Landlord Tenant Act. See R.C. 5321.04(A)(9). Indeed, the very nature of a claim for unlawful eviction requires that the complaining party have a tenancy in the property. Consequently, we find that the trial court properly considered the definition of a "tenant" as contained in R.C. Chapter 5321.

{¶ 20} Lee's reliance on R.C. 1923.02(A)(5) in this case is misplaced. This statutory provision is merely a definition, which identifies a class of persons that may be subject to the forcible-entry-and-detainer action. It does not create a cognizable claim on its own or impose any legal obligation upon a property owner. Accordingly, in this case, we must determine whether Lee acquired a tenancy in John's home before we can decide whether summary judgment was properly awarded.[1]

*Was a Tenancy Created?*

{¶ 21} Turning to the critical issue, we initially note that no other Ohio court has previously addressed whether a live-in caregiver automatically acquires a

---

1. We summarily note that Lee's claims for wrongful eviction against Nancy Wallace and Robert Burke fail as a matter of law because it is undisputed that they were neither owners of John's property nor his agents. Therefore, even if Lee had established that she had a tenancy in John's home, her wrongful-eviction claim against them fails because they were not the "landlord" as defined under R.C. 5321.01(B). See *Maguire v. Natl. City Bank,* 2d Dist. No. 22168, 2007-Ohio-4570, 2007 WL 2502424, ¶ 22 (where there is no landlord-tenant relationship between the plaintiff and defendant, plaintiff's purported claim for wrongful eviction must fail).

tenancy in an employer's home. Although Lee contends that this court has already decided the issue in *Reynolds v. Clark*, 8th Dist. No. 80210, 2002-Ohio-5464, 2002 WL 31260545, the case does not stand for such a proposition, nor is the issue even raised. Instead, the *Reynolds* decision addressed the jurisdiction of the common pleas court to decide claims for declaratory judgment, breach of contract, and quantum meruit between two parties who were also involved in a forcible-entry-and-detainer action in the housing division of the municipal court.

{¶ 22} Similarly, this court's decision in *Clark v. Reynolds* (Nov. 16, 2000), 8th Dist. No. 77749, 2000 WL 1714927, provides no authority in support of Lee's argument that the defendants were required to pursue a forcible-entry-and-detainer action. The mere fact that the property owner pursued that course in *Clark* does not mean that all other property owners must do the same when dealing with a live-in employee whose services are no longer needed. (Notably, in *Clark*, there was no dispute that the live-in nurse had a tenancy in the home based on her specific arrangement; the issue lay with when the tenancy terminated.) Thus, the determination of whether a tenancy existed depends on the specific facts and whether the live-in caregiver meets the definition of a tenant.

{¶ 23} Under R.C. 5321.01(A), a "tenant" is defined as "a person entitled under a rental agreement to the use and occupancy of residential premises to the exclusion of others." The statute further defines "rental agreement" as "any agreement or lease, written or oral, which establishes or modifies the terms, conditions, rules, or any other provisions concerning the use and occupancy of residential premises by one of the parties." R.C. 5321.01(D). Generally, "an individual who lives in a residence with another without a rental agreement and without the payment of rent is not a tenant and cannot maintain an action for wrongful eviction." *Stone v. Cazeau*, 9th Dist. No. 07CA009164, 2007-Ohio-6213, 2007 WL 4146777, ¶ 6, citing *Ogle v. Disbrow*, 6th Dist. Nos. L–04–1373 and L–05–1102, 2005-Ohio-4869, 2005 WL 2249582, ¶ 17; see also *Amick v. Sickles*, 177 Ohio App.3d 337, 2008-Ohio-3913, 894 N.E.2d 733, ¶ 19.

{¶ 24} Although Lee concedes that she did not have a rental agreement or pay rent, she argues that a tenancy was created by virtue of the private room provided to her as part of her oral employment agreement. She further claims that her services as a caregiver equated to "rent payments," because the value of her services exceeded the compensation she received. Based on the facts of this case and the record before us, we find Lee's arguments unpersuasive.

{¶ 25} First, the record is devoid of any evidence that Lee accepted less compensation for her services in exchange for a tenancy in John's home. Instead, the record is clear that the private room was provided as a necessary accommodation for Lee's job. Indeed, when on duty, Lee was responsible for helping John in the middle of the night if needed. And according to Lee, there

were several occasions when he would need assistance at that time. We therefore find that Lee's use of the private room was necessary for her to perform her job.

{¶ 26} Second, the record reveals that Lee had no expectation of a tenancy in John's home. For example, she was renting a room from her former employer during the month of August (while working for John) and later asked that the room be held for her; she never mailed out change-of-address cards or listed John's address as her residence for her driver's license or other personal accounts; and she conceded that she would have had no right to remain in John's house if she had quit. We further find compelling that Lee was not allowed to have her adult son (or other company) over to the house to visit. Therefore, Lee clearly did not have a right to use the premises to the "exclusion of others," and we find no evidence of any rental agreement between the parties. See R.C. 5321.01(A).

{¶ 27} And while we recognize that rental agreements can be made orally and that rent can be paid in services (as opposed to money), we find that reasonable minds can only conclude that neither occurred in this case.

{¶ 28} Finally, we find it necessary to address Lee's public-policy argument. Contrary to Lee's assertion, public policy does not favor requiring a homeowner to commence a forcible-entry-and-detainer action under the facts of this case. Here, despite Lee's claim that she had no notice of having to leave the house and that she was callously "disposed of," the record reveals that she did in fact know that her employment was going to be terminated. She specifically sought advice regarding her purported rights a week prior to her termination. Additionally, we can hardly say that Lee was callously "disposed of" when she was given an additional week's wages, which she voluntarily accepted.

{¶ 29} The record further reveals that John's family had grave concerns over the treatment that Lee was providing and feared that Lee would abandon John when he was the most vulnerable. Indeed, Lee admitted in her deposition that on one occasion, she demanded that John dismiss Dee, one of the part-time home-health aides, because she was very upset with Dee's work that day. John's family further believed that Lee was inappropriately snooping through John's personal financial records and, upon learning of John's net worth, she proposed marriage to him. Thus, in a situation like this, we find that public policy disfavors following the procedures outlined in R.C. Chapter 1923 when the occupant does not even have a tenancy in the property.

{¶ 30} Accordingly, applying a de novo standard of review, we find that summary judgment was proper because there is no dispute of material fact and the moving parties are entitled to judgment as a matter of law. See Civ.R. 56(C);

*Bonacorsi v. Wheeling & Lake Erie Ry. Co.,* 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 24.

{¶ 31} Lee's sole assignment of error is overruled.

Judgment affirmed.

BLACKMON, P.J., and JONES, J., concur.