[Cite as *Beavers v. PNC Bank, Natl. Assn.*, 2013-Ohio-5318.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99773**

## ARTISTINE BEAVERS

PLAINTIFF-APPELLANT

vs.

## PNC BANK, NATIONAL ASSOCIATION, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-777835

**BEFORE:** McCormack, J., Keough, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 5, 2013

**ATTORNEYS FOR APPELLANT**

Abraham Kay
Byron Van Iden
55 Public Square
Suite 1200
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEES**

**For PNC Bank, National Association**

Marcel C. Duhamel
Kyle S. Baird
Margaret D. Everett
Heather M. Lutz
Vorys, Sater, Seymour & Pease
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, OH 44114

**For Safeguard Properties, Inc.**

Markus E. Apelis
Joseph J. Santoro
Gallagher Sharp
Bulkley Building, 6th Floor
1501 Euclid Avenue
Cleveland, OH 44115

TIM McCORMACK, J.:

**{¶1}** Plaintiff-appellant, Artistine Beavers, appeals the trial court's decision granting summary judgment in favor of defendants-appellees, PNC Bank, National Association ("PNC") and Safeguard Properties, L.L.C. ("Safeguard").[1] We affirm the judgment of the trial court.

## Procedural History

**{¶2}** On March 12, 2012, Beavers initiated a complaint against PNC and Safeguard, alleging trespass, conversion, unlawful eviction, and breach of fiduciary duty.[2] The complaint arises from actions taken by PNC and Safeguard on February 27, 2012, to enter Beavers's home located on W. 60th Street, Cleveland, Ohio, as a result of Beavers's alleged default on her mortgage on the Cleveland property.

**{¶3}** On January 16, 2013, Safeguard filed a motion for summary judgment, which was granted by the trial court on March 28, 2013. PNC filed its motion for summary judgment on February 6, 2013, which was granted on March 14, 2013. In its journal entry granting PNC's motion, the trial court stated that Beavers's claims against PNC were barred by res judicata. Beavers filed this timely appeal.[3]

---

[1] Beavers filed her complaint against "Safeguard Properties, Inc."; however, the party identifies itself in this appeal as "Safeguard Properties, L.L.C.."

[2] Beavers's complaint against a third party, Manbir S. Sandhu, L.L.C., was dismissed without prejudice on May 30, 2012.

[3] Although Beavers failed to cite to the relevant portions of the record on which she relies in her brief on appeal, in accordance with App.R. 16(A)(7), we will review this matter in the interests of justice.

## Substantive Facts

{¶4} Beavers obtained a loan with National City Bank in December 1997, which is evidenced by a note in the amount of $43,400 that is dated December 22, 1997. The note was secured by a mortgage that is also dated December 22, 1997. The mortgage encumbered the property on W. 60th Street in Cleveland, Ohio. PNC acquired physical possession of the note and the mortgage as a result of its merger with National City Bank. On May 12, 2010, Beavers received a loan modification. The note, mortgage, and loan modification adjusted the amount of principal, interest, and escrow funds for taxes and insurance that Beavers was required to pay beginning July 1, 2010.

{¶5} The record demonstrates that Beavers failed to make a payment in August 2010, in accordance with the terms of the loan modification. While Beavers brought the loan current in July 2011, she failed to make the required payment in August 2011 and repeatedly thereafter. Finally, Beavers failed to make a payment in December 2011 and did not bring the loan current. Beavers, in failing to make the required payments, thereby defaulted under the terms of the note, mortgage, and loan modification.

{¶6} On January 10, 2012, PNC sent a letter to Beavers, advising her of her default and providing an opportunity to cure the default by making a payment by February 9, 2012. Beavers failed to make the requested payment. Consequently, the maturity date of the loan was accelerated and the full balance of the loan became due.

{¶7} Upon PNC's request, Safeguard, through various independent contractors, began performing visual inspections of the property. The independent contractors

observed on multiple occasions that the property was apparently vacant. Thereafter, Safeguard notified PNC that the property appeared to be vacant. PNC subsequently sent a letter to Beavers, notifying her that it would take steps to secure the property if Beavers did not notify PNC in writing, on or before February 17, 2012, whether she intended to maintain the property. Beavers failed to provide the written statement. As a result, PNC retained Safeguard to secure the property.

{¶8} On February 27, 2012, Safeguard entered and secured the property. In compliance with PNC's request, independent contractors hired by Safeguard proceeded to "winterize" the home by turning off the utilities, changing the locks on the back door, and securing the back door with a padlock.

{¶9} On March 15, 2012, PNC filed a complaint in foreclosure against Beavers, in Cuyahoga C.P. No. CV-778208. Beavers filed a counterclaim in the foreclosure action, alleging intentional infliction of emotional distress and intrusion upon seclusion, which was dismissed on May 31, 2012. On November 26, 2012, the court adopted the magistrate's decision and granted a foreclosure judgment in favor of PNC.

### Assignment of Error

> The Trial Court erred in granted [sic] Appellees' Summary Judgment Motions even though the Trial Court had before it substantial unresolved questions of fact and law.

### Law and Analysis

{¶10} Both PNC and Safeguard moved for summary judgment in this case, which the trial court granted. Beavers appeals from that judgment, claiming there are issues of

fact that remain to be litigated.  Specifically, Beavers contends that PNC and Safeguard entered her home illegally, did not act reasonably once they entered the home, and upon entering the home, caused damage.  Beavers also claims that the trial court erred in applying the doctrine of res judicata as it relates to the foreclosure action filed by PNC on March 15, 2012.

{¶11} An appellate court reviews a trial court's grant of summary judgment de novo.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.  Accordingly, we afford no deference to the trial court's decision and must independently review the record to determine if summary judgment was appropriate.  *See Brown v. Scioto Cty. Bd. Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

{¶12} Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.  *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C).

## PNC

{¶13} Beavers argues that there are issues of fact concerning her claims against PNC and the trial court incorrectly applied the principles of res judicata, because the

foreclosure action filed by PNC is not a "subsequent" action for the purposes of res judicata.

**{¶14}** According to the doctrine of res judicata, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the same transaction or occurrence that was the subject matter of a previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 1995-Ohio-331, 653 N.E.2d 226. For purposes of res judicata analysis, a "transaction" is defined as a "'common nucleus of operative facts.'" *Id.*, quoting 1 Restatement of the Law 2d, Judgments, Section 24, 198-199, Comment b (1982).

**{¶15}** Res judicata bars a claim when the following four elements are met: (1) there is a final, valid decision on the merits by a court of competent jurisdiction; (2) the second action involves the same parties or their privies as the first; (3) the second action raises claims that were or could have been litigated in the first action; and (4) the second action arises out of the transaction or occurrence that was the subject matter of the previous action. *Lenard v. Miller*, 8th Dist. Cuyahoga No. 99460, 2013-Ohio-4703, ¶ 27, citing *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 84.

**{¶16}** In this case, we find that all four elements of res judicata have been established. PNC, defendant-appellee in this appeal, filed a foreclosure action in CV-778208, against Beavers, plaintiff-appellant in this appeal. Beavers filed a counterclaim against PNC in the foreclosure action, alleging, among other things, that

PNC unlawfully entered the property on W. 60th Street on February 27, 2012, when Safeguard secured the property on PNC's behalf. Beavers's claims in this action are based on the same allegations that PNC unlawfully entered her home on W. 60th Street in February 2012. Thus, all of Beavers's claims, whether filed in this action or in the foreclosure action, are based upon the same transaction or occurrence. Moreover, the additional claims Beavers made in this action concerning the alleged wrongful entry that were not made in the foreclosure action *could have been litigated* in the foreclosure action, because all claims concern the same transaction. Finally, there was a final, valid decision on the merits in PNC's foreclosure action, wherein the court granted judgment in favor of PNC and against Beavers.

{¶17} While Beavers claims that the foreclosure action is not a "subsequent" action for purposes of applying res judicata, we find no merit in her claim. The fact that the foreclosure action was filed after the instant action is immaterial to our analysis. The very purpose of res judicata is to deter repeated litigation of resolved issues, thereby ensuring finality in judgments and the conservation of judicial resources. *Grava*, 73 Ohio St.3d at 383-384, 653 N.E.2d 226. As such, for purposes of applying res judicata, the effective date of the final judgment is the determinative factor. "When two actions are pending which are based on the same claim, or which involve the same issue, it is the final judgment first rendered in one of the actions which becomes conclusive in the other action * * *, regardless of which action was first brought." 1 Restatement of the Law 2d,

Judgments, Section 14, 198-199, Comment a (1982); *see also Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir.1981).

{¶18} Based on the foregoing analysis, the trial court properly granted summary judgment in favor of PNC on Beavers's claims of trespass, conversion, unlawful eviction, and breach of fiduciary duty. Beavers's assignment of error as it relates to PNC is overruled.

## Safeguard

{¶19} Beavers also argues that there are issues of fact concerning her claims against Safeguard and the trial court erred in granting summary judgment in Safeguard's favor. In support of her argument, Beavers claims that Safeguard's entry was without the benefit of legal process, Safeguard did not act reasonably once they entered the home, and Safeguard caused damage to her home upon entry.

### Trespass

{¶20} Beavers claims that Safeguard's actions amounted to trespass. The common law tort in trespass upon real property occurs when "a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue * * * ." *Apel v. Katz*, 83 Ohio St.3d 11, 19, 1998-Ohio-420, 697 N.E.2d 600. This court similarly defined the tort as "(1) an unauthorized intentional act and (2) entry upon land in the possession of another." *See also L.A.D.S. Dev. Co. v. McCrarry*, 8th Dist. No. 89816, 2008-Ohio-2367, ¶ 17. We find, in this case, that Safeguard is entitled to summary judgment on this claim because

PNC was authorized by contract to enter Beavers's property. As such, the first element of a trespass claim — an unauthorized act — has not been established.

**{¶21}** As previously stated, the evidence shows that on December 22, 1997, Beavers obtained a loan with National City Bank (later acquired by PNC through merger), which is evidenced by a note in the amount of $43,400. The note was secured by a mortgage, which mortgage encumbered the property on W. 60th Street in Cleveland, Ohio. On May 12, 2010, Beavers received a loan modification. The note, mortgage, and loan modification adjusted the amount of principal, interest, and escrow funds for taxes and insurance that Beavers was required to pay beginning July 1, 2010. Beavers acknowledged that she signed the loan documents and had an obligation to pay the amount PNC loaned her in accordance with the terms of the signed documents.

**{¶22}** While Beavers made several payments on her loan following the loan modification, she ultimately failed to make all of the required payments, in accordance with the loan modification, and thereby defaulted under the terms of the note, mortgage, and loan modification. Initially, on October 2, 2011, PNC advised Beavers that she defaulted because she failed to make the payment due in September 2011. PNC advised Beavers that she needed to make a payment on or before November 4, 2011, in order to cure the default. Beavers made a payment on October 28, 2011, that was insufficient to cure the default, so PNC returned that amount to Beavers. Thereafter, Beavers agreed to make two additional payments in December 2011 in order to bring the loan current. She failed to make the required payments and, as a result, failed to bring her loan current.

{¶23} On January 10, 2012, PNC sent a letter to Beavers, advising her of her default and providing an opportunity to cure the default by making a payment by February 9, 2012. Once again, Beavers failed to make the payment and cure the default. Therefore, the maturity date of the loan was accelerated and the full balance of the loan became due. Beavers admitted that she was not current on her loan as of February 27, 2012, the date that Safeguard entered and secured the property.

{¶24} According to the terms of the mortgage, PNC, as lender, is entitled to certain rights with respect to the property should the borrower — Beavers — fail to perform the covenants and agreements contained within the mortgage. Section 7 of the mortgage provides as follows:

> If Borrower fails to perform the covenants and agreements contained in this Security Instrument, * * * then Lender may do and pay for whatever is necessary to protect the value of the property and Lender's rights in the property. Lender's actions may include * * * entering on the property to make repairs.

In accordance with this provision, and because Beavers had defaulted on the note, PNC contracted with Safeguard to take action to secure its property.

{¶25} Prior to securing the property, at PNC's request, Safeguard performed visual inspections and ultimately determined that the property was vacant. PNC then advised Beavers that it had been notified the property was vacant and it would take steps to secure its property if she failed to provide written notice that she intended to maintain the

property. There is no evidence that Beavers responded to PNC's request. In fact, Beavers denies receiving the notice.

{¶26} In a factually similar case, this court found that the independent contractor hired to secure property for a bank did not trespass when it took actions to secure such property. *See Tauwab v. Huntington Bank*, 8th Dist. Cuyahoga No. 96996, 2012-Ohio-923. In *Tauwab*, a property owner defaulted on a note and the bank instructed a contractor, Safeguard, to secure the property, in accordance with a property protection provision. This court found that where the owner defaulted on said note, Huntington Bank was empowered through the mortgage's property protection provision, which allowed the lender to do "whatever is reasonable and appropriate to protect the lender's interest in the property," to secure the property. *Id.* at ¶ 8. We further found that it was reasonable and appropriate for Huntington Bank to order Safeguard to secure the premises where Safeguard inspected the property multiple times, reporting on each occasion that the house appeared to be vacant, and the property owner admitted that the home was vacant for a period of time prior to Safeguard's entry due to his incarceration. *Id.* at ¶ 9. In addition, we determined that the bank's directive to Safeguard to secure the premises was a proper exercise of authority under the property protection provision, and the owner's testimony that the property was *not* vacant for a period of time before entry did not raise an issue of material fact as to whether Huntington Bank legally entered the property. *Id.* Finally, this court in *Tauwab* held that Huntington Bank's authorization

extended to its contractor, the subcontractor, and the employees, and therefore, Safeguard could not be held liable for trespass under these circumstances. *Id.* at ¶ 12.

**{¶27}** Likewise, in this case, the mortgage authorized PNC to do "whatever is necessary to protect the value of the property," including enter the property, where the owner of the property defaulted. When Beavers defaulted, PNC contracted with Safeguard to secure the property. Upon making multiple inspections, Safeguard determined that the property appeared vacant and notified PNC. In accordance with its authority under the mortgage's property protection provision, PNC directed Safeguard to secure the property. PNC's authority to secure the property extended to Safeguard. *Tauwab* at ¶ 12. Beavers's testimony that the property was not vacant when Safeguard secured the premises, or that she did not receive PNC's notice that the home appeared vacant, does not raise an issue of material fact as to whether Safeguard, upon direction of PNC, legally entered the property. Accordingly, summary judgment in favor of Safeguard on Beavers's trespass claim was proper, as no genuine issues of fact remain to be litigated.

Conversion

**{¶28}** In her complaint, Beavers claims that Safeguard's actions in securing the premises upon PNC's direction constituted unlawful conversion of her real and personal property.

**{¶29}** Conversion is "the wrongful control or exercise of dominion over the property belonging to another inconsistent with or in denial of the rights of the owner." *Tabar v. Charlie's Towing Serv., Inc.*, 97 Ohio App.3d 423, 427-428, 646 N.E.2d 1132 (8th Dist.1994), citing *Bench Billboard Co. v. Columbus*, 63 Ohio App.3d 421, 579 N.E.2d 240 (10th Dist.1989); *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.*, 24 Ohio App.3d 91, 493 N.E.2d 289 (10th Dist.1985). In order to establish conversion, the owner of the property must show the following: (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property; and (2) the possessor refused to deliver the property to its rightful owner. *Pointe at Gateway Condo. Owner's Assn. v. Schmelzer*, 8th Dist. Cuyahoga Nos. 98761 and 99130, 2013-Ohio-3615, ¶ 64, citing *Tabar* at 427-428. A claim of conversion must be based on the taking of identifiable personal property. *Landskroner v. Landskroner*, 154 Ohio App.3d 471, 2003-Ohio-5077, 797 N.E.2d 1002, ¶ 27 (8th Dist.).

**{¶30}** In this case, Beavers fails to establish conversion. We previously determined that Safeguard, upon the authorized direction of PNC, lawfully entered the premises and secured the property. Any dominion or control exerted over Beavers's personal property was, therefore, not wrongful. Moreover, the evidence shows that

Beavers had access to her personal possessions: the front door was not padlocked; she entered the home the day after Safeguard secured the premises; and Beavers requested and received the code for the backdoor padlock. Beavers does not allege that any identifiable personal property was removed from the home. Finally, to the extent that Beavers is asserting a claim of conversion of real property, her claim must fail because Ohio law does not recognize such a claim. *Cleveland v. Sohio Oil Co.*, 8th Dist. Cuyahoga No. 78860, 2001 Ohio App. LEXIS 5192, * 20-21 (Nov. 21, 2001).

{¶31} Based upon the foregoing, we find there are no genuine issues of material fact to be tried. Summary judgment was therefore proper as to Beavers's claim of conversion.

Unlawful Eviction

{¶32} Beavers claims that Safeguard's actions constituted an unlawful eviction, in violation of R.C. 5321.15.

{¶33} R.C. 5321.01, Ohio's Landlord-Tenant Act, governs the relationship between landlords and tenants with respect to rental agreements of residential premises. R.C. 5321.01(A) defines a tenant as "a person entitled under a rental agreement to the use and occupancy of residential premises to the exclusion of others." R.C. 5321.01(B) defines a landlord as "the owner, lessor, or sublessor of residential premises, the agent of the owner, lessor, or sublessor, or any person authorized by the owner, lessor, or sublessor to manage the premises or to receive rent from a tenant under a rental agreement." A rental agreement is "any agreement or lease, written or oral, which establishes or modifies

the terms, conditions, rules, or any other provisions concerning the use and occupancy of residential premises by one of the parties." R.C. 5321.01(D). The statute prohibits certain self-help remedies initiated by a landlord. R.C. 5321.15.

**{¶34}** This claim fails as a matter of law because there is no evidence that PNC or Safeguard is a landlord, that Beavers is a tenant, or that Beavers had a rental agreement with either party. In fact, Beavers acknowledged that she was the owner of the property on February 27, 2012, the date Safeguard secured the property. Her claim for unlawful eviction, therefore, fails. *Lee v. Wallace*, 186 Ohio App.3d 18, 2010-Ohio-250, 926 N.E.2d 328, ¶ 20 (8th Dist.), citing *Maguire v. Natl. City Bank*, 2d Dist. Montgomery No. 22168, 2007-Ohio-4570, ¶ 22 (where there is no landlord-tenant relationship between the plaintiff and defendant, plaintiff's purported claim for wrongful eviction must fail).

### Breach of Fiduciary Duty

**{¶35}** Beavers claims that by virtue of "being the holder of the mortgage" and having "exercis[ed] dominion and control over her real and personal property," PNC and Safeguard owed her a special duty of care. This claim fails as a matter of law.

**{¶36}** In order to establish a breach of fiduciary duty, Beavers must demonstrate: (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom. *Miller v. KeyBank N.A.*, 8th Dist. Cuyahoga No. 86327, 2006-Ohio-1725, ¶ 26, citing *Harwood v. Pappas & Assoc., Inc.*, 8th Dist. Cuyahoga No. 84761, 2005-Ohio-2442, ¶ 26. A fiduciary relationship has been defined as one "'in which special confidence and trust is reposed in the integrity and

fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'" *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 442, 1996-Ohio-194, 662 N.E.2d 1074, quoting *In re Termination of Emp.*, 40 Ohio St.2d 107, 115, 321 N.E.2d 603 (1974). This relationship is created out of an informal relationship "'only when both parties understand that a special trust or confidence has been reposed.'" *Tornado Techs., Inc. v. Quality Control Inspection, Inc.*, 8th Dist. Cuyahoga No. 97514, 2012-Ohio-3451, ¶ 26, quoting *Umbaugh Pole Bldg. Co., Inc. v. Scott*, 58 Ohio St.2d 282, 390 N.E.2d 320 (1979), paragraph one of the syllabus. Thus, the fiduciary relationship must be mutual. *Id.*, citing *Horak v. Nationwide Ins. Co.*, 9th Dist. Summit No. 23327, 2007-Ohio-3744.

{¶37} In this case, Safeguard was not the "holder of the mortgage," and there is no evidence of a relationship between Safeguard and Beavers, special or otherwise. Beavers's claim for breach of fiduciary duty against Safeguard therefore fails as a matter of law.

{¶38} Accordingly, because we find that summary judgment in favor of PNC and Safeguard was proper in this case, Beavers's assignment of error is overruled.

{¶39} Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN T. GALLAGHER, J., CONCUR