[Cite as *Figgie v. Figgie*, 2021-Ohio-1812.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| SUSAN A. FIGGIE, ET AL., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 109834 |
| v. | : | |
| BETSY FIGGIE, ET AL., | : | |
| Defendants-Appellees. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 27, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2019ADV242885

### *Appearances:*

Benesch, Friedlander, Coplan & Aronoff L.L.P., Yelena Boxer and Kristen-Elise F. DePizzo, *for appellant* Susan A. Figgie, through her conservator Harry E. Figgie IV.

Baker & Hostetler L.L.P., Michael K. Farrell, Robert R. Galloway, and Corey N. Barnes, *for appellee* Betsy Figgie, Trustee.

Calfee Halter & Griswold, L.L.P., and Mitchell G. Blair, Colleen M. O'Neil, Kelly A. Callam, and Alexandra Forkosh; Ulmer & Berne, L.L.P., Steven S. Kaufman, Robin M. Wilson, and Ashtyn N. Saltz, *for appellee* Brent Ballard, in his capacity as Co-Trustee for the Harry E. Figgie, Jr. Trust, Trustee for the Nancy F. Figgie Trust, and Trustee for the Matthew P. Figgie Trust.

EMANUELLA D. GROVES, J.:

**{¶ 1}** Plaintiff-appellant, Susan A. Figgie ("Susan"), through her conservator, Harry E. Figgie, IV ("Harry IV"), [1] appeals the probate court's decision granting the Civ.R. 12(B)(6) motion to dismiss filed by defendant-appellee Brent Ballard ("Ballard"), as co-Trustee of the Harry E. Figgie II Trust Agreement dated July 15, 1976, as amended; Trustee of the Nancy F. Figgie Trust Agreement dated September 7, 1976, as amended; and Trustee of the Matthew P. Figgie Trust Agreement dated October 20, 1985, as amended (collectively, the "Trust Defendants"). Appellant contends that she sufficiently pled claims for fraud, tortious interference with expectancy of inheritance, unjust enrichment, conversion, and constructive trust arising out of a 2001 stock redemption against the Trust Defendants and that the probate court, therefore, erred in granting the Trust Defendants' motion to dismiss. For the reasons that follow, we affirm the probate court's decision.

### Procedural History and Factual Background

**{¶ 2}** In the companion appeal of the underlying case, *Figgie v. Figgie*, 8th Dist. Cuyahoga No. 109829, 2021-Ohio-1195, we accurately and comprehensively set forth the factual background and procedural history. For consistency, we adopt that summary and recount as follows:

> Nancy Figgie ("Nancy") and Harry E. Figgie, Jr. ("Harry II") had three children — Harry E. Figgie, III ("Harry III"), Mark P. Figgie ("Mark"),

---

[1] Susan is developmentally disabled and her brother, Harry IV, serves as her conservator. For purposes of this appeal, we will use "Appellant" where we would normally refer to Susan.

and Matthew P. Figgie ("Matthew").  On August 23, 1983, Harry III executed a trust agreement that established the Figgie Family Trust (the "Harry III Trust"), of which his three children, Harry IV, Katie, and [Susan], were beneficiaries.[2]

Harry III died on December 21, 1999.  Among the assets of the Harry III Trust at the time of Harry III's death were classes of voting and nonvoting shares of Clark Reliance Corporation ("CRC"), a closely held corporation built by the Figgie family.  Harry II had conveyed the CRC stock to the Harry III Trust while Harry III was alive.

Prior to his death, Harry III had a "bitter falling out" with his parents (Harry II and Nancy) and brother Matthew.  This estrangement continued until Harry III died.  Pursuant to the terms of the trust agreement, after Harry III died, Harry II served as the trust advisor for the Harry III Trust, charged with decisions relating to the investment, sale, and purchase of stock for the trust.  Wilmington Trust Co. was the trustee of the Harry III Trust.

Following Harry III's death, the Harry III Trust owned 4,000 shares of Class A CRC stock and 76,000 shares of Class B CRC stock (collectively, the "CRC stock").  On October 21, 2001, CRC redeemed the CRC stock from the Harry III Trust for a purchase price of $1,909,007 "through a transaction that was initiated and directed by [Harry II]" (the "2001 CRC stock redemption").  At the time of the 2001 CRC stock redemption, Harry II, Nancy, Mark, and Matthew were all shareholders of CRC.  Harry II was also an officer of CRC or a member of its board of directors.  At the time of the 2001 CRC stock redemption, Harry IV was 18, Katie was a minor, and Susan was "cognitively and/or medically disabled."

Harry II died on July 14, 2009.  Prior to their deaths, Harry II, Nancy, and Matthew each executed trust agreements establishing separate trusts — the Harry E. Figgie II Trust Agreement dated July 15, 1976, as amended (the "Harry II Trust"), the Nancy Figgie Trust Agreement dated September 7, 1976, as amended (the "Nancy Trust"), and the Matthew P. Figgie Trust Agreement dated October 20, 1985, as amended (the "Matthew Trust").

---

[2] The trust agreement for the Harry III Trust was not attached to the first amended complaint.  Accordingly, we assume, but cannot confirm, that the first amended complaint accurately sets forth the terms of the trust agreement.

On December 20, 2018, Katie and Harry IV, individually and as conservator of [Susan], filed suit in the Cuyahoga County Court of Common Pleas, Probate Division, against (1) defendant-appellee Betsy Figgie ("Betsy"), as co-trustee of the Harry E. Figgie II Trust Agreement dated July 15, 1976, as amended, (2) Ballard, as co-Trustee of the Harry E. Figgie II Trust Agreement dated July 15, 1976, as amended, Trustee of the Nancy F. Figgie Trust Agreement dated September 7, 1976, as amended, and Trustee of the Matthew P. Figgie Trust Agreement dated October 20, 1985, as amended and (3) CRC related to the 2001 CRC stock redemption (Case No. 2018ADV239801).

On April 20, 2019, appellants filed a first amended complaint in Case No. 2018ADV239801, asserting claims for declaratory judgment, fraud, tortious interference with expectancy of inheritance, unjust enrichment, constructive trust, and civil conspiracy against CRC and the Trust Defendants (collectively, "defendants").

In the first amended complaint, [Appellant] alleged that as trust advisor of the Harry III trust, Harry II owed fiduciary duties, including an "undivided duty of good faith and loyalty," to the Harry III Trust and to the beneficiaries of the trust, and that, at the time of the 2001 CRC stock redemption, Harry II "was operating under several serious and insurmountable conflicts of interest." [Appellant] further alleged that CRC and Harry II's conduct in connection with the 2001 CRC stock redemption was "misleading, in bad faith and/or fraudulent in nature" and that the purchase price the Harry III Trust received for its CRC stock during the 2001 CRC stock redemption was "well below market value," resulting in losses to the Harry III Trust and to appellants as beneficiaries of the trust. Specifically, [Appellant] alleged that Harry II and CRC (1) "did not properly, fairly or adequately secure or evaluate a valuation of the CRC [s]tock," (2) relied on a valuation of CRC prepared by a non-independent person/company, (3) did not secure an independent valuation of the CRC stock, (4) manipulated or relied on known and unreasonably manipulated data to reduce the valuation of the CRC stock, and (5) "maliciously combined" to secure the redemption of CRC stock at a substantial savings to CRC in order to benefit CRC and other Figgie family shareholders at the expense of the Henry III Trust and its beneficiaries.

[Appellant] claimed that as a result of the 2001 CRC stock redemption, CRC and its remaining shareholders recognized "a significant increase" in the value of their shares and that this appreciated value could be traced to assets currently held by CRC, the Harry II Trust, the Nancy Trust, and the Matthew Trust. [Appellant] alleged that [she] had been

deprived of the CRC stock (or its fair value in assets) as part of their inheritance, that the defendants had been unjustly enriched by the "wrongful, fraudulent conduct" that led to the 2001 CRC stock redemption and that [Appellant] was, therefore, entitled to the imposition of a constructive trust over "the improper benefits, gains, appreciation, profits and unjust enrichment derived from the 2001 redemption of the CRC [s]tock."

[Appellant] claimed that [she] did not discover, and had no way of discovering, "the false, flawed and concealed data and valuation process" that was used in the 2001 CRC stock redemption until November 25, 2018.[3] [Appellant] requested an order declaring (1) that the 2001 redemption of the CRC stock was "below value," (2) that "improper benefits and proceeds" from the 2001 CRC stock redemption exist in the Harry II Trust, the Nancy Trust, the Matthew Trust, and CRC, (3) the amount of the lost value, and (4) that defendants are "equitably estopped from denying liability" or denying the "claims stemming from the fraudulent conduct" alleged in the first amended complaint. [Appellant] also sought compensatory and punitive damages, attorney fees, costs, and expenses and an order imposing a constructive trust over the defendants' assets "derived or traced from the improper benefits, gains, appreciation [or] profits" from the 2001 CRC stock redemption.

On May 24, 2019, CRC and the Trust Defendants filed separate motions to dismiss the first amended complaint pursuant to Civ.R. 12(B)(6). The Trust Defendants argued that the first amended complaint failed to state a claim for which relief could be granted against the Trust Defendants because: (1) it contained no allegations of actionable conduct by the Trust Defendants; (2) any liability on the part of Harry II could not be imputed to the Trust Defendants; (3) appellants' claims were barred by the applicable statute of limitations, including R.C.

---

[3] It is unclear from the first amended complaint how appellants allegedly discovered these facts. The first amended complaint simply avers that certain, unidentified "disclosures" were made "in late November 2018" regarding the 2001 CRC stock redemption and that appellants "discovered" certain "information" on November 25, 2018 "that led them to later find out" about the circumstances surrounding the 2001 CRC stock redemption.

[In Appellant's first amended complaint, filed as conservator for Susan, it is alleged that because of Susan's disability, she was unable to understand or consent to the transaction in 2001. Further, that due to Susan's disability, she has, to this day, not discovered, and had no way to discover the allegedly false, flawed, and concealed data and valuation used when the CRC stock was redeemed by CRC from the Harry III Trust.]

2117.06, 2305.09(c), (d), and 2305.14; (4) appellants failed to plead their fraud claim against the Trust Defendants with particularity as required under Civ.R. 9(B); (5) appellants could not establish essential elements of their unjust enrichment claim against the Trust Defendants, and (6) the imposition of a constructive trust is a remedy, not an independent cause of action.

[Appellant] filed an opposition and maintained that the allegations of the first amended complaint — describing how the 2001 CRC stock redemption was fraudulent, "detail[ing] the concealment of material facts relating to the value of the stock transaction, 'with the knowledge, acquiescence and/or assistance of all Defendants (or their predecessors)'" and asserting that the Trust Defendants "knew about the fraud," "participated in it" and "retained the benefit of misrepresentations" that caused [Appellant] "substantial damages" — were sufficient to state a claim for which relief could be granted under Civ.R. 12(B)(6). [Appellant] denied that the statute of limitations set forth in R.C. 2117.06 applied to [her] claims, argued that all applicable statutes of limitations were tolled through application of the discovery rule and asserted that constructive trust was a "stand-alone claim" or was "properly joined" pursuant to Civ.R. 18.

On June 18, 2020, the probate court granted the Trust Defendants' motion to dismiss, dismissing all six counts against the Trust Defendants. With respect to [Appellant's] fraud claim, the probate court held that although [Appellant] had sufficiently pled a fraud claim against CRC — based on CRC's alleged concealment of information material to the 2001 CRC stock redemption — [Appellant] had not sufficiently pled a fraud claim against the Trust Defendants. The probate court explained:

The Court finds that the essence of Plaintiff's fraud claim alleges that [CRC] and [Harry II] had a duty to disclose information which was concealed from the Plaintiff regarding the 2001 redemption of CRC stock. Specifically, Plaintiff assert that CRC, [Harry II], and, upon information and belief, all other Defendants (or their predecessors in interest), knew the 2001 redemption of CRC stock was fraudulent, deflated, and manipulated, and that such information was concealed from Plaintiff. Upon review of the allegations in the First Amended Complaint, Plaintiff has sufficiently alleged with particularity that CRC had a duty to disclose, but instead concealed information, which was material to the transaction of the redemption of CRC stock, and that Plaintiffs justifiably relied upon the false and misleading information provided by CRC which resulted in an alleged monetary injury to the

Plaintiff. This Court cannot find, however, that Plaintiff has sufficiently plead the allegations of fraudulent conduct against [the Trust Defendants], as Plaintiffs have not plead with particularity any alleged fraudulent conduct by the Trust Defendants in the redemption of CRC stock.

Plaintiff allege that the Trust Defendants, or their predecessors in interest, knew of the allegedly fraudulent and/or manipulative redemption of CRC stock in 2001. As such, Plaintiff assert that upon their information and belief, the Defendants, or their predecessors in interest, knew the 2001 redemption of CRC stock was fraudulent. Plaintiffs have failed to identify any specific representations or concealment of facts made by the Trust Defendants upon which Plaintiffs relied. Plaintiff further request that this Court hold the Trust Defendants liable for alleged fraudulent conduct and actions, not of the named Trust Defendants, but of their predecessors in interest. The allegations asserted against the Trust Defendants, or their predecessors in interest, do not rise to the level of particularity as required by Civ.R. 9. Consequently, upon review of the First Amended Complaint, the Court finds that Plaintiff has failed to plead the claim of fraud with particularity as to the Trust Defendants[.]

With respect to [Appellant's] claim for declaratory judgment, the probate court held that [Appellant's] request for an order declaring that "improper benefits and proceeds" from the 2001 CRC stock redemption are in the Harry II Trust, the Nancy Trust, and the Matthew Trust and that defendants are "equitably estopped from denying liability" or denying the "claims stemming from the fraudulent conduct" asserted in the complaint were not "justiciable controversies between adverse parties which fall under R.C. Chapter 2721" and, therefore, dismissed that claim as to the Trust Defendants.

The probate court determined that [Appellant's] claims of tortious interference with expectancy of inheritance, unjust enrichment, constructive trust, and civil conspiracy against the Trust Defendants failed as well. The probate court held that [Appellant] could not establish the expectancy-of-inheritance or causation elements for its tortious interference claim because appellants' expectancy of inheritance "occurred in 1999 when they inherited the trust assets upon Harry III's death." The probate court held that [Appellant's] unjust enrichment claim was barred by the statute of limitations and that any alleged benefit conferred upon the Trust Defendants as a result of the 2001 CRC stock redemption was an indirect benefit that could not support a claim for unjust enrichment against them. The probate court

further held that constructive trust is "a form of equitable relief" in cases of fraud and unjust enrichment, not an independent claim, and that [Appellant] could not prevail on their civil conspiracy claim against the Trust Defendants because the Trust Defendants had not been named in the civil conspiracy count and the underlying fraud claim against the Trust Defendants had been dismissed. The probate court also determined that there was no just reason for delay pursuant to Civ.R. 54.

*Id.* at ¶ 3-17.

{¶ 3} Appellant now appeals and assigns the following errors for our review:

### Assignment of Error No. 1
The probate court improperly dismissed appellant's constructive trust claim against the Trust Defendants.

### Assignment of Error No. 2
The probate court also incorrectly dismissed appellant's claim for unjust enrichment against the Trust Defendants.

### Assignment of Error No. 3
The probate court incorrectly determined that appellant failed to state a claim of fraud against the Trust Defendants.

### Assignment of Error No. 4
The probate court incorrectly dismissed appellant's claim for tortious interference with expectancy of inheritance.

### Assignment of Error No. 5
The probate court incorrectly dismissed appellant's claim for conversion. [4]

### Law and Analysis

{¶ 4} The probate court dismissed the complaint pursuant to Civ.R. 12(B)(6). "A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim on which

---

[4] Appellant does not challenge the probate court's dismissal of the claims for declaratory judgment or civil conspiracy. Accordingly, we do not further address those claims here.

relief can be granted "'is procedural and tests the sufficiency of the complaint.'" *Harper v. Weltman, Weinberg & Reis Co., L.P.A.*, 8th Dist. Cuyahoga No. 107439, 2019-Ohio-3093, ¶ 11, quoting *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.,* 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992), citing *Assn. for Defense of Washington Local School Dist. v. Kiger*, 42 Ohio St.3d 116, 117, 537 N.E.2d 1292 (1989).

{¶ 5} "A trial court's review of a Civ.R. 12(B)(6) motion to dismiss is limited to the four corners of the complaint along with any documents properly attached to, or incorporated within, the complaint." *Lakeside Produce Distrib. v. Wirtz*, 8th Dist. Cuyahoga No. 109460, 2021-Ohio-505, ¶ 11, citing *Glazer v. Chase Home Fin. L.L.C.*, 8th Dist. Cuyahoga Nos. 99875 and 99736, 2013-Ohio-5589, ¶ 38. "Within those confines, a court accepts as true all material allegations of the complaint and makes all reasonable inferences in favor of the nonmoving party." *Srokowski v. Shay*, 8th Dist. Cuyahoga No. 100739, 2014-Ohio-3145, ¶ 10, citing *Fahnbulleh v. Strahan*, 73 Ohio St.3d 666, 667, 1995-Ohio 295, 653 N.E.2d 1186.

{¶ 6} "It is a long-standing principle that a plaintiff is not required to prove his or her case within the complaint at the pleading stage." *Dean v. Cuyahoga Cty. Fiscal Office*, 8th Dist. Cuyahoga No. 107824, 2019-Ohio-5115, ¶ 16, citing *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-145, 573 N.E.2d 1063 (1991). "'Consequently, as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" *Id.*, quoting *York* at 425.

{¶ 7} An appellate court reviews de novo of a trial court's decision granting a motion to dismiss under Civ.R. 12(B)(6). *Naiman Family Partners, L.P. v. Saylor*, 8th Dist. Cuyahoga No. 108607, 2020-Ohio-4987, ¶ 11, citing *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. "In applying the de novo standard of review, this court independently reviews the record without affording deference to the trial court's judgment." *Penniman v. Univ. Hosps. Health Sys.*, 8th Dist. Cuyahoga No. 107406, 2019-Ohio-1673, ¶ 7, citing *Bandy v. Cuyahoga Cty.,* 8th Dist. Cuyahoga No. 106635, 2018-Ohio-3679, ¶ 10, citing *Herakovic v. Catholic Diocese of Cleveland*, 8th Dist. Cuyahoga No. 85467, 2005-Ohio-5985, ¶ 13.

{¶ 8} Preliminarily, as previously noted, this is a companion appeal based on the same operative facts and circumstances as *Figgie*, 8th Dist. Cuyahoga No. 109829, 2021-Ohio-1195.[5] In the instant matter, assignments of error Nos. 1, 2, 3, and 4 are identical to the four assignments of error raised in the companion appeal. *Id.* at ¶ 18.

{¶ 9} There, following a detailed analysis of the parties' arguments and appropriate case law, we found that the probate court did not err in dismissing the complaint as to the Trust Defendants. Having addressed the identical errors, concerning the same operative facts and circumstances, we now, in accordance and

---

[5] At footnote 2 in the brief to this court, Appellant stated: "Issues Presented for Review 1-4 largely mirror those Issues raised by Appellants Harry E. Figgie, IV and Catherine E. Figgie in their brief filed on September 14, 2020 in companion Appeal No. 109829." Where appropriate, in the interest of judicial efficiency, the arguments presented by these appellants are incorporated within.

in harmony with that decision, overrule assignments of error Nos. 1, 2, 3, and 4 of the present appeal.

{¶ 10} We turn our attention to the fifth assignment of error, wherein Appellant argues the probate court erred when it dismissed her claim for conversion.

{¶ 11} "Conversion is "'the wrongful control or exercise of dominion over the property belonging to another inconsistent with or in denial of the rights of the owner.'" *Poston ex rel. Poston v. Shelby-Love*, 8th Dist. Cuyahoga No. 104969, 2017-Ohio-6980, ¶ 18, quoting *Beavers v. PNC Bank, N.A.*, 8th Dist. Cuyahoga No. 99773, 2013-Ohio-5318, ¶ 29 ""'"'The elements of a conversion are: (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages."'"'" *Poston* at *id.*, quoting *Schiff v. Dickson*, 8th Dist. Cuyahoga Nos. 96539 and 96541, 2011-Ohio-6079, ¶ 30, quoting *Dream Makers, Inc. v. Marshek*, 8th Dist. Cuyahoga No. 81249, 2002-Ohio-7069, ¶ 19, quoting *Haul Transport of Va., Inc. v. Morgan*, 2nd Dist. No. 14859, 1995 Ohio App. LEXIS 2240, 9, quoting 18 American Jurisprudence 2d, Conversion, Section 2, at 146-147 (1985).

{¶ 12} Further,

> [i]f defendant came into possession of the property lawfully, the plaintiff must prove two additional elements to establish conversion: (1) that the plaintiff demanded the return of the property after the defendant exercised dominion or control over the property; and (2) that the defendant refused to deliver the property to the plaintiff.

*6750 BMS, L.L.C. v. Drentlau*, 8th Dist. Cuyahoga No. 103409, 2016-Ohio-1385, ¶ 28, citing *R&S Distrib., Inc. v. Hartge Smith Nonwovens, L.L.C.*, 1st Dist.

Hamilton No. C-090100, 2010-Ohio-3992, ¶ 23. "The measure of damages in a conversion action is the value of the converted property at the time it was converted." *BMS* at *id.*, citing *Tabar v. Charlie's Towing Serv.*, 97 Ohio App.3d 423, 427-428, 646 N.E.2d 1132 (8th Dist.1994).

{¶ 13} The probate court's well-reasoned opinion stated in pertinent part as follows:

> [T]he Court does not find that Plaintiff's allegations meet the elements for a claim of conversion. On October 20, 2001, CRC redeemed from the Harry III Trust the CRC shares through a transaction that was allegedly directed by Harry Jr. as the Trust Advisor of the Harry III Trust. This was a transaction which involved the redemption of the shares for a purchase; it was not a wrongful exercise of dominion over property in exclusion of the rights of Plaintiff, and CRC was not withholding the shares from Plaintiff possession under a claim consist[ent] with its rights. Even if the Court were to find the shares were purchased for less than their worth due to the allegedly fraudulent conduct of CRC, the transfer of Plaintiff's property rights of the CRC Shares during the redemption do not amount to conversion. As such, Count II of the First Amended Complaint should be dismissed in its entirety.

{¶ 14} As the probate court aptly noted, even if it were to find that the shares were purchased for less than what they were worth, due to the allegedly fraudulent conduct of CRC, the transfer of the plaintiff's property rights of the CRC shares during the redemption does not amount to conversion. Significantly, here, because CRC paid the Harry III Trust for the shares it once held, the Harry III Trust was not dispossessed of its property interest in the CRC shares. Because the Harry III Trust received proceeds from the redemption of the shares, this was not a wrongful control or exercise of dominion over property belonging to another.

{¶ 15} Appellant acknowledges as much, positing that "this was a transaction which involved the redemption of the shares for a purchase price * * * rather than a wrongful exercise of dominion over property in exclusion of the rights of plaintiff." The position is not well taken because it is undisputed that the Harry III Trust was compensated at the time of the redemption, albeit in an amount not presently pleasing.  As such, the conversion claim cannot be maintained.

{¶ 16} Nonetheless, Appellant argues Ohio courts have recognized that a claim for conversion may be maintained in cases involving the transfer of corporate stock.  In support, Appellant cites *Crowe v. FirstEnergy Corp.*, 5th Dist. Holmes No. 10CA023, 2011-Ohio-5092.  However, *Crowe* is distinguishable from the instant matter and does not support the position Appellant advances.

{¶ 17} In *Crowe*, husband and wife were divorced on July 28, 2008.  Per the terms of the parties' separation agreement, husband agreed to transfer 50 percent of his shares of common stock in FirstEnergy Corp. to wife.  At the time of the divorce, husband owned 844.137 shares of common stock in FirstEnergy Corp.  Husband subsequently delivered to FirstEnergy's Shareholder Services Department a stock power, dated August 28, 2008, requesting a transfer of one-half of his FirstEnergy shares of common stock to his wife.  Because a dividend reinvestment was due to be made on or about September 1, 2008, FirstEnergy waited until September 13, 2008, to transfer the shares of the stock, after the reinvested shares were purchased and posted to all accounts.

**{¶ 18}** However, FirstEnergy mistakenly permitted the transfer of all of the husband's shares of stock to the wife (850.558 shares at that time). At the time of transfer, the transfer price of the stock was $69.42 per share. On September 26, 2008, the wife, who was unaware that FirstEnergy had mistakenly transferred 100 percent of the husband's shares of FirstEnergy stock to her, had all 850 shares deposited into a brokerage account through a direct registration system option. In March 2009, the wife, still unaware of the mistake, sold the shares of FirstEnergy stock.

**{¶ 19}** In April 2009, the husband became aware that FirstEnergy had transferred 100 percent of his FirstEnergy stock to his wife, notified the wife's attorney of the error, and demanded that 50 percent of the shares be transferred back to his account. The husband also contacted FirstEnergy and informed the company it had mistakenly transferred all of his FirstEnergy shares of stock to his wife.

**{¶ 20}** On May 1, 2009, FirstEnergy's stock closed at $42.38 per share. FirstEnergy and the wife worked together to transfer 425 shares of FirstEnergy stock back to the husband. In light of the mistake of the transfer, FirstEnergy offered to reimburse the husband for the quarterly dividends issued to shareholders during the period that the shares of stock were not in the husband's account, but the husband declined the offer and did not accept a September 1, 2009 dividend check from FirstEnergy.

**{¶ 21}** In August 2009, the husband sued both FirstEnergy and the wife for conversion. The trial court granted summary judgment in favor of FirstEnergy and

the wife and husband appealed. On appeal, the court found that the husband failed to make a showing of conversion on the part of FirstEnergy or the wife. The court found that FirstEnergy had provided Civ.R. 56 evidence to show that the shares have been returned to the husband and FirstEnergy has offered to pay the husband the missing dividends.

{¶ 22} In this matter, unlike *Crowe*, 5th Dist. Holmes No. 10CA023, 2011-Ohio-5092, where the husband was mistakenly dispossessed of the shares, which were quickly returned once the mistake was discovered, the Harry III Trust maintained an ownership interest in either the CRC stock or its proceeds, once redeemed. Having never been dispossessed of its ownership interest in either the actual CRC shares of stock or the redemptive proceeds, Appellant's conversion claim does not survive.

{¶ 23} Finally, although Appellant alleged in the first amended complaint and also at oral argument, that due to Susan's cognitive and medical disability, she was unable to understand or consent to the transaction at issue. However, we find herein that the conversion claim does not survive because the trust beneficiary was not dispossessed of an ownership interest in either the CRC shares or the redemptive proceeds. Since the trust beneficiary always possessed an ownership interest in either the CRC shares or the redemptive proceeds, Susan's inability to have comprehend or to have consented to the transaction is not relevant. As such, the probate court did not err in dismissing Harry IV's conversion claim.

{¶ 24} Accordingly, we overrule assignment of error five.

**{¶ 25}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Probate Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN A. GALLAGHER, J., CONCUR